IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GREAT DIVIDE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 19-cv-621 |
| LINDA CONSTRUCTION, INC.; JESSE | ) | |
| McGEE; LINDA McGEE; and SENG LEASING | ) | |
| SERVICES, INC. | ) | |
| | ) | |
| Defendant. | | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes Plaintiff, Great Divide Insurance Company, by and through its attorneys, Dana

A. Rice, James M. Eastham and Abigail M. Afridi of Traub Lieberman Straus & Shrewsberry LLP,

and for its Complaint for Declaratory Judgment against Defendants, Linda Construction, Inc.,

Jesse McGee, Linda McGee, and Seng Leasing Services, Inc., it states as follows:

## SUMMARY OF THE DISPUTE

1.      This case involves a dispute between Plaintiff, Great Divide Insurance Company

("Great Divide"), and Defendants, Linda Construction, Inc. ("Linda"), Jesse McGee and Linda

McGee (the "McGees"), and Seng Leasing Services, Inc. ("Seng") over whether two insurance

policies that Great Divide issued to Linda provide coverage for the alleged theft of certain tractors

and trailers that Linda claims were stolen back in 2014, as well as for a related lawsuit filed by

Seng against Linda and the McGees concerning many of the same tractors and trailers Linda now

claims were stolen.

2.      Great Divide seeks a declaration from this Court that the subject policies provide

no coverage for Linda's first party property loss claim and/or for the underlying lawsuit filed by

Seng against Linda and the McGees.

## THE PARTIES

3.      Great Divide is, and at all relevant times was, a corporation organized under the laws of North Dakota with its principal place of business in Iowa. Great Divide is, and at all relevant times was, an admitted carrier to issue policies in Illinois.

4.      Linda is, and at all relevant times was, a corporation organized under the laws of Illinois with its principal place of business in Illinois.

5.      Jesse McGee is, and at all relevant times was, a citizen of Illinois.

6.      Linda McGee is, and at all relevant times was, a citizen of Illinois.

7.      Seng is, and at all relevant times was, a corporation organized under the laws of Illinois with its principal place of business in Illinois. Seng is named as a necessary party in this action because it is the plaintiff in the underlying lawsuit described below, in which Linda and the McGees are named as defendants.

## JURISDICTION

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the plaintiff and the defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

9.      Venue is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to this litigation occurred in this judicial district, and because at least one of the defendants resides in this judicial district.

## THE *LINDA* CLAIM

10.     On December 12, 2017, Jessie McGee, the Vice President of Linda, sent correspondence to Berkley Specialty Underwriters Managers, LLC, ("Berkley"), stating that in March of 2014 a claim was filed for damages arising out of the alleged theft of certain tractors and

2

trailers. (A true and accurate copy of Mr. McGee's December 12, 2017 letter is attached hereto as **Exhibit A**).

11.    The letter explained that Linda has now "litigated through the court system" and "it has been determined that the vehicles were, in fact, stolen." (*Id*., p. 1)

12.    The letter further states that Linda would like to reopen/reinstate the claim filed in March of 2014 and seek payment under the Great Divide Policies for the stolen units. (*Id*.)

13.    The letter enclosed a list of the units stolen and a copy of a "Victim Information Notice" ("Notice") filed with the Chicago Police Department ("CPD"). (*Id*., p. 2-3)

14.    The Notice indicates that it is not an official police report, and does not provide much information in terms of what was initially reported to the police. Instead, the Notice indicates that the incident was "non-criminal", the name of the victim/complaint was "Jesse McGee" and the date of the occurrence was March 14, 2014. (*Id*., p. 3)

15.    Linda claims the following units were stolen:

| **Year** | **Make** | **Body** | **Model** | **VIN** | **Notes** | **Date Stolen** |
|---|---|---|---|---|---|---|
| 2004 | Volvo | Tractor | VLN64T420 | 4V4NC9GG14N359133 | Seng Leasing | 3/20/14 |
| 2004 | Volvo | Tractor | VLN64T420 | 4V4NC9GG54N359152 | Seng Leasing | 3/20/14 |
| 2005 | Mac | Trailer | Tipper | 5MAMN48265C008571 | Seng Leasing | 3/20/14 |
| 2005 | Mac | Trailer | Tipper | 5MAMN48285C008572 | Seng Leasing | 3/20/14 |
| 2005 | Mac | Trailer | Tipper | 5MAMN48215C008574 | Seng Leasing | 3/20/14 |
| 2005 | Mac | Trailer | Tipper | 5MAMN48205C008579 | Seng Leasing | 3/20/14 |
| 2005 | Mac | Trailer | Tipper | 5MAMN48225C008583 | Seng Leasing | 3/20/14 |
| 2005 | Mac | Trailer | Tipper | 5MAMN48245C008584 | Seng Leasing | 3/20/14 |
| 2005 | Mac | Trailer | Tipper | 5MAMN48275C008580 | Seng Leasing | 3/20/14 |
| 2005 | Mac | Trailer | Tipper | 5MAMN482X5C008587 | Seng Leasing | 3/20/14 |
| 1999 | Kenworth Day Cab | Tractor | T-800 | 3WKDDU9X7YF839980 | Seng Leasing | 3/20/14 |
| 1999 | Mack Day Cab | Tractor | CH613 | 1M1AA13Y3XW094567 | Seng Leasing | 3/20/14 |
| 1993 | Mack | Tractor | 991 | 1M2AA14Y0PW027483 | Seng Leasing | 3/20/14 |
| 2007 | Int'l Day Cab | Tractor | 8600 | 1HSHXSBR17J406645 | | Mar-14 |
| 2007 | Titan | Trailer | Tipper | 2TVTP1L277D000596 | Wells Fargo | 3/15/14 |

3

| 2007 | Titan | Trailer | Tipper | 2TVTP1L217D000593 | Wells Fargo | 3/15/14 |
|------|-------|---------|--------|-------------------|-------------|---------|
| 2007 | Titan | Trailer | Tipper | 2TVTP1L287D000591 | Wells Fargo | 3/15/14 |
| 2004 | EAST | Trailer | Tipper | 1E1U1Y2834RA34134 | WinTrust Bank | 3/20/14 |
| 2008 | Kenworth Day Cab | Tractor | T-800 | 1XKDDU9X06J266224 | | Mar-14 |

(*Id.*, p. 2). (The vehicles identified above are hereinafter referred to collectively as "Vehicles").

## **AFFIDAVITS OF THEFT**

16.     In support of its claim, Linda submitted 19 "Affidavits of Theft", one for each of the Vehicles. (True and accurate copies of Linda's 19 "Affidavits of Theft" are attached hereto as **Exhibit B**).

17.     The affidavits were all signed on March 7, 2018, almost four years after the thefts allegedly occurred. (*Id.*)

18.     The affidavits identify the finance companies for the vehicles as being either Seng Truck Leasing ("Seng"), Wells Fargo, or WinTrust Bank. (*Id.*)

19.     While some of the affidavits specifically indicate that the loan payment for the vehicle that is the subject of the affidavit is not past due, other affidavits fail altogether to indicate whether the loan payment for the vehicle is past due. (*Id.*)

20.     The affidavits state that all of the Vehicles at issue in the *Linda* Claim were stolen in March of 2014. (*Id.*)

## **THE *SENG* LAWSUIT**

21.     Through its investigation, Great Divide discovered that Seng Leasing Services, Inc. filed a Verified Second Amended Complaint against Jessie McGee, Linda McGee, and Linda in the Circuit Court of Cook County, Illinois, under case no. 14 L 050571 ("*Seng* SAC" or "*Seng* Lawsuit"). (A true and accurate cope of the *Seng* SAC is attached hereto as **Exhibit C**).

22.     The *Seng* SAC was filed on August 3, 2016.  According to the Cook County online case docket, the case was dismissed for want of prosecution on November 8, 2017, but then reinstated on November 21, 2017.

**A.     The *Seng* SAC**

23.     The *Seng* SAC alleges Seng Leasing Services, Inc. was formally known as Seng Truck Leasing Co., Inc. (hereinafter referred to as "Seng"). (Ex. C, ¶1)

24.     The *Seng* SAC brings the following counts against Linda: replevin/detinue (count I); conversion (count II); and breach of contract (count III). (*Id*., Counts I-III)

25.     Count I of the *Seng* SAC alleges that on September 1, 2010, Linda agreed to lease from Seng and Seng agreed to lease to Linda ten 2005 Mac Tipper trailers at an agreed price of $8,805.00 per month for a term of 30 months commencing on October l, 2010 and ending on March 1, 2013. (*Id*., ¶4)

26.     The *Seng* SAC further alleges that Linda promised to remit all balances due Seng under the terms of the lease. (*Id*.)

27.     Seng allegedly delivered to Linda all ten of the 2005 Mac Tipper trailers, including the trailers listed above as stolen in the *Linda* Claim (with the exception of the trailer VIN 5MAMN48285C008572). (*Id*., ¶5)

28.     The *Seng* SAC further alleges that on September 2, 2010, Linda agreed to lease from Seng three 2004 Volvo Tractor Cab Trucks and two 2003 Mack Tractor Cab Trucks at an agreed price of $4,570.00 per month for a term of 24 months commencing on October 1, 2010 and ending on September 1, 2012, and that Linda agreed to remit all balances due Seng. (*Id*., ¶6)

29.     Seng allegedly delivered all five of the aforesaid tractor cab trucks to Linda, which included the two '04 Volvo Tractor Cab Trucks listed as stolen in the *Linda* Claim. (*Id*., ¶7)

30.     The *Seng* SAC further alleges that on November 5, 2012, Linda agreed to purchase from Seng a 2000 Kenworth Tandem Axle Tractor Day Cab ("Kenworth Tractor") for $22,000.00, together with an 8% interest rate on the principal unpaid balance, payable in 16 consecutive monthly installments of principal and interest in the sum of $1,500.00 per month commencing on December 15, 2012 and ending on March 15, 2014. (*Id*., ¶8)

31.     Seng allegedly delivered the Kenworth Tractor (listed as stolen in connection with the *Linda* Claim) to Linda. The *Seng* SAC alleges that upon delivery of the Kenworth Tractor, it was the responsibility and obligation of Linda to remit the lease price and outstanding account balances to Seng. (*Id*., ¶9)

32.     Under the lease contracts with Linda, there allegedly was a total indebtedness of $498,014.00, of which Linda allegedly paid $409,583.50, and that on November 5, 2012, Linda remained indebted to Seng for $88,430.50 for prior purchases and the additional sums of interest. (*Id*., ¶11-12)

33.     In 2012, Linda allegedly reported as stolen two of the leased Mac Tipper vehicles (which were not included in the list of allegedly stolen Vehicles), and Seng was compensated through claims to its insurer. (*Id*., ¶13)

34.     One of these vehicles allegedly was later identified and recovered from Linda during a repossession of various vehicles in Linda's possession. (*Id*., ¶14)

35.     The vehicle was transferred to the insurance company who had already paid the insurance proceeds to Seng. (*Id*.)

36.     The *Seng* SAC alleges Linda has refused to remit additional monies for the delivered vehicles, and has refused to yield possession thereof to Seng, notwithstanding Seng's demand and attempted peaceable repossession. (*Id*., ¶16)

6

37.     Seng allegedly was and now is the owner of the vehicles identified in the *Seng* SAC[1], and is lawfully entitled to the possession of these vehicles. (*Id.*, ¶17)

38.     The *Seng* SAC alleges that the three '05 Mac Tipper Trailers and one of the '04 Volvo Tractor Cabs were being wrongfully detained and concealed by Linda, and that the other '04 Volvo Tractor Cab was left by Linda at Tri-State Truck Services Inc. on March 11, 2011 in Bridgeview, Illinoi where the accumulated storage fees exceed the value of the truck. (*Id.*, ¶18-19)

39.     In Count I of the *Seng* SAC, Seng seeks (1) possession of the aforementioned vehicles, (2) the value of the vehicles not delivered and damages for detention, and (3) the entry of temporary and permanent injunctions enjoining Linda from removing the vehicles from this jurisdiction, or from selling, transferring or assigning the vehicles to a third party, or from disabling the subject tractors, plus costs. (*Id.*, Count I)

40.     Count II of the *Seng* SAC is for conversion and alleges that Linda wrongfully and without authorization assumed control, dominion and ownership over the alleged vehicles and seeks $42,500.00, the value of the vehicles not delivered and damages for detention, plus costs. (*Id.*, ¶30)

41.     Count III of the *Seng* SAC is for breach of contract and alleges that Linda failed and refused to tender the required payments due to Seng pursuant to the alleged lease contracts. (*Id.*, ¶34)

42.     Specifically, in consideration for the trucks delivered by Seng under the contracts, Linda allegedly was obligated to compensate Seng in the amount of $498.014.00. (*Id.*, ¶35)

---

[1] The vehicles identified are VIN 5MAMN48205C008579, VIN 5MAMN48245C008584, VIN 5MAMN482X5C008587 (which are three of the '05 Mac Tipper Trailers listed as stolen in the *Linda* Claim), the two '04 Volvo Tractor Cabs (listed as stolen in the *Linda* Claim), and vehicles identified as VIN 1M1AA13Y33W153619 and VIN 1M1AA13Y43W153619.

43. After crediting Linda for payments made and allowances given, the sum of $88,430.50 allegedly remains due to Seng. (*Id.*, ¶36)

44. Additionally, Linda allegedly continues to accrue monthly rental fees in the amount of $7,044.00 per month for the vehicles that remain in Linda's possession since the last payment made by Linda was received in December of 2013. (*Id.*, ¶37)

45. Accordingly, Linda allegedly has accrued an additional $218,794.50 in rental fees. (*Id.*, ¶40)

46. Therefore, according to the *Seng* SAC, Linda is in default in the amount of $306,794.50, plus interest, costs and attorneys' fees. Count III seeks to recover damages in the amount of $306,794.50, plus interest, costs, and attorneys' fees. (*Id.*, ¶41)

**B.    Court Orders entered in the *Seng* Lawsuit**

47. On November 20, 2014, the Court in the *Seng* Lawsuit, granted default judgment in favor of Seng and against Linda in the amount of $88,430 and ordered the Sheriff to seize from Linda the following vehicles (identified by VINs) and deliver same to Seng:

1. 5MAMN48265C008571
2. 5MAMN48285C008572
3. 5MAMN48215C008574
4. 5MAMN48205C008579
5. 5MAMN48275C008580
6. 5MAMN48225C008583
7. 5MAMN48245C008584
8. 5MAMN482X5C008587
9. 4V4NC9GG14N359133
10. 4V4NC9GG44N359157
11. 1M1AA13Y33W153613
12. 1M1AA13Y43W153619
13. 3WKDDU9X7YF839980

(A true and accurate copy of the November 20, 2014 Court Order is attached hereto as **Exhibit D**).

8

302718127v1 1007810

48.     A number of the vehicles listed in the November 20, 2014 Court Order were included in the list of Vehicles that Linda submitted to Great Divide in connection with its theft claim. (Ex. A, p. 2)

49.     On July 14, 2015, the Court in the *Seng* Lawsuit amended the judgment entered against Linda to be $163,930 in favor of Seng. (A true and accurate copy of the July 14, 2015 Court Order is attached hereto as **Exhibit E**).

50.     Upon information and belief, the *Seng* Lawsuit remains ongoing.

## POLICE REPORTS

51.     Linda also provided Great Divide with police reports from the CPD in support of the *Linda* Claim.

52.     The police report, dated October 31, 2017, identifies the incident as "Non-Criminal." (A true and accurate copy of the October 31, 2017 police report is attached hereto as **Exhibit F**).

53.     Linda also provided a police report, dated June 13, 2018. (A true and accurate copy of the June 13, 2018 police report is attached hereto as **Exhibit G**).

54.     The June 13, 2018 police report identifies the incident as a "Theft – Over $500", lists the victim as Jessie McGee, the suspect as House of Trucks, and lists the same 19 Vehicles that are the subject of the *Linda* Claim. (Ex. G)

55.     The Narrative section of the June 13, 2018 police report states "In summary, Jessie McGee … came into the 005th District Station to report the above listed trucks as stolen. Jessie McGee … stated the House of Trucks Offender(s) …, relayed to him that he was in the negative of $88,430 of payments for each truck listed. Jessie McGee … stated he produced written checks to show proof of each payment and the installment payment agreement as well. Jessie McGee …

302718127v1 1007810

spoke with Area2 Detective Hines and DSS Sgt. Wilson and was instructed to make a police report listing each truck as stolen. Jessie McGee … was given a VIN, NFI was given." (*Id.*)

56.     Upon information and belief, the police investigation into Linda's alleged theft of the Vehicles is ongoing.

## THE GREAT DIVIDE POLICIES

57.     As mentioned, Great Divide issued a business auto policy to Linda under policy no. BAP1526874-11 for the policy period of January 26, 2012 to February 27, 2013 ("12-13 Policy"). (A true and accurate copy of the 12-13 Policy is attached hereto as **Exhibit H**).

58.     The 12-13 Policy was subsequently renewed under policy no. BAP1526874-12 for the period of February 27, 2013 to February 27, 2014 ("13-14 Policy"). (A true and accurate copy of the 13-14 Policy is attached hereto as **Exhibit I**). (The 12-13 Policy and 13-14 Policy are hereinafter referred to collectively as the "Policies").

59.     Among other coverages, the Policies provide physical damage – comprehensive coverage for the actual cash value or cost of repair, whichever is less, minus $5,000 deductible for each covered auto.

60.     The covered autos under the Policies for such coverage are identified as symbol 2 (owned "autos" only) and symbol 8 (hired "autos" only).

61.     The Policies also provide business auto liability coverage and the covered autos under the Policies for such coverage is identified as symbol 1 (any "auto").

## COUNT I

## NO "LOSS" OR THEFT OF A COVERED "AUTO"

62.     Great Divide adopts and realleges the allegations in paragraphs 1 through 61 of its Complaint for Declaratory Judgment as paragraph 62 of Count I of its Complaint for Declaratory Judgment as if fully set forth herein.

10

63.     The Policies provide, in relevant part, the following with respect to its Schedule of

Coverages and Covered Autos:

**BUSINESS AUTO COVERAGE FORM DECLARATIONS**
* * *
**ITEM TWO.**
**Schedule of Coverages and Covered Autos**

This policy provides only those coverages where a charge is shown in the premium
column below. Each of these coverages will apply only to those "autos" shown as
covered "autos". "Autos" are shown as covered "autos" for a particular coverage by
the entry of one or more of the symbols from the COVERED AUTO Section of the
Business Auto Coverage Form next to the name of the coverage.

| Coverages and Limits * * * | Coverage Autos * * * | Premium * * * |
|---|---|---|
| **Physical Damage – Comprehensive Coverage** Limit = Actual Cash Value or Cost of Repair, whichever is less minus $5,000 deductible for each covered auto but no deductible applies to loss caused by fire or lightning. See Item Four for Hired or Borrowed "Autos". | 2, 8 | $4,122 |
| **Physical Damage – Collision Coverage** Limit = Actual Cash Value or Cost of Repair, whichever is less minus $5,000 deductible for each covered auto. See Item Four for Hired or Borrowed "Autos". | 2, 8 | $26,206 |
| **Physical Damage – Towing and Labor** $____ for Each Disablement of a Private Passenger Auto | N/A | N/A |

* * *

**BUSINESS AUTO COVERAGE FORM**
* * *

**SECTION I – COVERED AUTOS**

11

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

### A.    Description Of Covered Auto Designation Symbols

| Symbol * * * | Description Of Covered Auto Designation Symbols * * * |
|---|---|
| **2** * * * | Owned "Autos" - Only those "autos" you own (and for Liability Coverage any "trailers you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. <br> * * * |
| **8** | Hired "Autos" Only – Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |

* * *

(Exs. H-I)

64.    The Policies provide, in relevant part, the following with respect to the physical damage coverage provided therein:

### SECTION III – PHYSICAL DAMAGE COVERAGE

### A.    Coverage

1.    We will pay for "loss" to a covered "auto" or its equipment under:

    **a.    Comprehensive Coverage**

    From any cause except:

    **(1)**    The covered "auto's" collision with another object; or

    **(2)**    The covered "auto's" overturn.

    **b.    Specified Causes Of Loss Coverage**

    Caused by:

    * * *

    **(2)**    Theft;

    * * *

    **c.    Collision Coverage**

12

Caused by:

    **(1)**    The covered "auto's" collision with another object; or

    **(2)**    The covered "auto's" overturn.

* * *

**SECTION V – DEFINITIONS**

* * *

**B.**    "Auto" means:

    **1.**    A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

    **2.**    Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

* * *

**J.**    "Loss" means direct and accidental loss or damage.

* * *

(Exs. H-I).

65.    According to the allegations in the *Seng* Lawsuit, a number of the vehicles Linda claims were stolen were actually leased to Linda and repossessed by the lessor due to Linda's alleged default on its lease payments. (Ex. C)

66.    The court in the *Seng* Lawsuit granted default judgment in favor of Seng and against Linda and ordered the Sheriff to seize from Linda a number of vehicles that Linda now claims were stolen from it. (Exs. D-E)

67.    The Vehicles are not covered under the Policies' theft coverage, as they were not stolen.

68.    Moreover, the Vehicles are not otherwise covered under the Policies' physical damage coverage because there has been no "loss" to a covered auto, as that term is defined under the Policies, sufficient to trigger coverage under the Policies.

13

69.     Great Divide has and had no duty under the Policies to indemnify Linda for any losses or damages Linda may have incurred in connection with the *Linda* Claim.

70.     An actual controversy exists between Great Divide and Linda, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Great Divide, respectfully prays that this Honorable Court:

    a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Great Divide Policies;

    b.    Find and declare the *Linda* Claim does not trigger coverage under the Policies, as there was no theft of and/or "loss" to a covered auto under the Policies;

    c.    Find and declare that Great Divide has and had no duty under the Great Divide Policies to indemnify Linda for any losses or damages Linda may have incurred in connection with the *Linda* Claim; and

    d.    Grant Great Divide such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT II

## NO "LOSS" OR THEFT DURING THE POLICY PERIOD

71.     Great Divide adopts and realleges the allegations in paragraphs 1 through 70 of its Complaint for Declaratory Judgment as paragraph 71 of Count II of its Complaint for Declaratory Judgment as if fully set forth herein.

72.     The Policies contain the following condition with respect to the Policies' periods of coverage:

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

* * *

    **7.**    **Policy Period, Coverage Territory**

Under this coverage form, we cover "accidents" and "losses" occurring:

**a.**    During the policy period shown in the Declarations; and

* * *

(Exs. H-I)

73.    According to the *Linda* Claim, as well as the insured's "Affidavits of Theft", all of the Vehicles were allegedly stolen in March of 2014. (Exs. A-B)

74.    The Policies, however, only provide coverage for accidents and losses that occur while the policies are in effect, namely from January 26, 2012 to February 27, 2013 and from February 27, 2013 to February 27, 2014. (Exs. H-I)

75.    Accordingly, even if there was a theft of and/or "loss" to a covered auto under the Policies, which Great Divide expressly denies that there was, all of the alleged thefts and/or repossessions of the Vehicles occurred after the expiration of the Policies.

76.    Because there has been no evidence submitted to indicate that there was any theft of or "loss" to a covered "auto" during the Great Divide Policies, the *Linda* Claim does not trigger coverage under the Policies.

77.    Great Divide has and had no duty under the Policies to indemnify Linda for any losses or damages Linda may have incurred in connection with the *Linda* Claim.

78.    An actual controversy exists between Great Divide and Linda, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Great Divide, respectfully prays that this Honorable Court:

a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Great Divide Policies;

b.    Find and declare that the *Linda* Claim does not trigger coverage under the Policies, as there was no theft of and/or "loss" to a covered auto during the policy period;

15

c.   Find and declare that Great Divide has and had no duty under the Great Divide Policies to indemnify Linda for any losses or damages Linda may have incurred in connection with the *Linda* Claim; and

d.   Grant Great Divide such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT III

## LINDA BREACHED ONE OR MORE OF THE POLICIES' LOSS CONDITIONS

79.   Great Divide adopts and realleges the allegations in paragraphs 1 through 78 of its Complaint for Declaratory Judgment as paragraph 79 of Count III of its Complaint for Declaratory Judgment as if fully set forth herein.

80.   The Policies provide, in relevant part, the following with respect to the Policies' "Business Auto Conditions" stated therein:

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A.    Loss Conditions**

* * *

**2.    Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.**   In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the 'accident" or "loss". Include:

**(1)**   How, when and where the "accident" or "loss" occurred;

**(2)**   The "insured's" name and address; and

**(3)**   To the extent possible, the names and addresses of any injured persons and witnesses.

**b.**   Additionally, you and any other involved "insured" must:

16

    **(1)**    Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

    **(2)**    Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

    **(3)**    Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

    **(4)**    Authorize us to obtain medical records or other pertinent information.

    **(5)**    Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.**    If there is "loss" to a covered "auto" or its equipment you must also do the following:

    **(1)**    Promptly notify the police if the covered "auto" or any of its equipment is stolen.

    **(2)**    Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

    **(3)**    Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

    **(4)**    Agree to examinations under oath at our request and give us a signed statement of your answers.

* * *

(Exs. H-I)

81.    Linda's December 12, 2017 notice letter of the *Linda* Claim states that in March of 2014 a claim was filed for the allegedly stolen tractors and trailers and now that the court in the underlying *Seng* Lawsuit has determined the vehicles were in fact stolen, Linda is reopening/reinstating the claim filed in March of 2014. (Ex. A, p. 1)

17

82.     However, Linda's Affidavits of Theft for the Vehicles at issue were not signed by Mr. McGee or notarized until March 7, 2018. (Ex. B)

83.     Additionally, while Linda forwarded a "Victim Information Notice" that Linda filed in March of 2014 with the Chicago Police Department ("CPD"), this report does not provide sufficient information for Great Divide to adjust the claim.  For example, the Victim Information Notice contains no information about the vehicles that were allegedly reported as stolen in 2014. (Ex. A, p. 3)

84.     The other police reports that Linda submitted to Great Divide are dated October 31, 2017 and June 13, 2018, respectively. (Exs. F-G)

85.     Accordingly, even if the *Linda* Claim triggers the Policies' physical damage coverage, which Great Divide expressly denies that it does, the Policies provide no coverage for the *Linda* Claim to the extent Linda breached one or more of the Policies' loss conditions.

86.     Great Divide has and had no duty under the Policies to indemnify Linda for any losses or damages Linda may have incurred in connection with the *Linda* Claim.

87.     An actual controversy exists between Great Divide and Linda, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Great Divide, respectfully prays that this Honorable Court:

a.      Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Great Divide Policies;

b.      Find and declare the Policies provide no coverage for the *Linda* Claim to the extent Linda breached one or more of the Policies' loss conditions;

c.      Find and declare that Great Divide has and had no duty under the Great Divide Policies to indemnify Linda for any losses or damages Linda may have incurred in connection with the *Linda* Claim; and

18

     d.     Grant Great Divide such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT IV

## THE DEDUCTIBLE LIMITS GREAT DIVIDE'S EXPOSURE FOR ANY "LOSS" TO A COVERED "AUTO"

88.     Great Divide adopts and realleges the allegations in paragraphs 1 through 87 of its Complaint for Declaratory Judgment as paragraph 88 of Count IV of its Complaint for Declaratory Judgment as if fully set forth herein.

89.     The Policies also contain the following "Deductible" provision:

**D.    Deductible**

> For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.
>
>                          * * *

(Exs. H-I)

90.     The Policies' Business Auto Declarations state that the deductible applicable to the physical damage – comprehensive coverage provided under the Policies is $5,000 for each covered "auto". (*Id.*)

91.     Even if the *Linda* Claim triggers the Policies' physical damage coverage, which Great Divide expressly denies that it does, the Policies' $5,000 deductible would apply to each covered "auto" under the Policies for which Linda now seeks recovery.

92.     Great Divide has and had no duty under the Policies to indemnify Linda for any losses or damages that Linda may have incurred in connection with the *Linda* Claim.

93.     An actual controversy exists between Great Divide and Linda, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

302718127v1 1007810

WHEREFORE, Plaintiff, Great Divide, respectfully prays that this Honorable Court:

a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Great Divide Policies;

b.    Find and declare the Policies' $5,000 deductible applies to each covered "auto" under the Policies to further limit Great Divide's exposure for the *Linda* Claim;

c.    Find and declare that Great Divide has and had no duty under the Great Divide Policies to indemnify Linda for any losses or damages that Linda may have incurred in connection with the *Linda* Claim; and

d.    Grant Great Divide such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT V

## THE "LIMIT OF INSURANCE" PROVISION LIMITS GREAT DIVIDE'S EXPOSURE FOR ANY "LOSS" TO A COVERED "AUTO"

94.    Great Divide adopts and realleges the allegations in paragraphs 1 through 93 of its Complaint for Declaratory Judgment as paragraph 94 of Count V of its Complaint for Declaratory Judgment as if fully set forth herein.

95.    The Policies also contain the following "Limit Of Insurance" provision:

**C.**    **Limit Of Insurance**

**1.**    The most we will pay for "loss" in any one "accident" is the lesser of:

    **a.**    The actual cash value of the damaged or stolen property as of the time of the "loss"; or

    **b.**    The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.
                         \* \* \*

**3.**    Any adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**4.**    If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.
                         \* \* \*

302718127v1 1007810

(Exs. H-I)

96.     Even if the *Linda* Claim triggers the Policies' physical damage coverage, which Great Divide expressly denies that it does, the Policies' "Limit Of Insurance" provisions limit Great Divide's exposure for any "loss" that Linda may have sustained, as set forth above.

97.     Great Divide has and had no duty under the Policies to indemnify Linda for any losses or damages that Linda may have incurred in connection with the *Linda* Claim.

98.     An actual controversy exists between Great Divide and Linda, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Great Divide, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Great Divide Policies;

b.     The Policies' "Limit Of Insurance" provisions limit Great Divide's exposure for any "loss" Linda may have sustained (if any);

c.     Find and declare that Great Divide has and had no duty under the Great Divide Policies to indemnify Linda for any losses or damage that Linda may have incurred in connection with the *Linda* Claim; and

d.     Grant Great Divide such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT VI

## THE "LOSS PAYMENT – PHYSICAL DAMAGE COVERAGES" CONDITION LIMITS GREAT DIVIDE'S EXPOSURE FOR ANY "LOSS" TO A COVERED "AUTO"

99.     Great Divide adopts and realleges the allegations in paragraphs 1 through 98 of its Complaint for Declaratory Judgment as paragraph 99 of Count VI of its Complaint for Declaratory Judgment as if fully set forth herein.

100.     The Policies also contain the following condition:

21

**4.      Loss Payment – Physical Damage Coverages**

At our option we may:

**a.**      Pay for, repair or replace damaged or stolen property;

**b.**      Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.**      Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

* * *

(Exs. H-I)

101.     Even if the *Linda* Claim triggers the Policies' physical damage coverage, which Great Divide expressly denies that it does, Condition **4.**, above, further limits Great Divide's exposure for any "loss" sustained by Linda (if any).

102.     Great Divide has and had no duty under the Policies to indemnify Linda for any losses or damages that Linda may have incurred in connection with the *Linda* Claim.

103.     An actual controversy exists between Great Divide and Linda, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Great Divide, respectfully prays that this Honorable Court:

a.      Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Great Divide Policies;

b.      The Policies' Condition **4.**, above, further limits Great Divide's exposure for any "loss" sustained by Linda (if any);

c.      Find and declare that Great Divide has and had no duty under the Great Divide Policies to indemnify Linda for any losses or damages Linda may have incurred in connection with the *Linda* Claim; and

d.      Grant Great Divide such other and further relief that the Court deems proper under the facts and circumstances.

22

## COUNT VII

## NO COVERAGE UNDER THE POLICIES FOR THE *SENG* LAWSUIT

104.     Great Divide adopts and realleges the allegations in paragraphs 1 through 103 of its Complaint for Declaratory Judgment as paragraph 104 of Count VII of its Complaint for Declaratory Judgment as if fully set forth herein.

105.     The Policies provide, in relevant part, the following with respect to its Schedule of Coverages and Covered Autos concerning the Policies' business auto liability coverage:

**BUSINESS AUTO COVERAGE FORM DECLARATIONS**
* * *

**ITEM TWO.**
**Schedule of Coverages and Covered Autos**

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| Coverages and Limits<br>* * * | Coverage Autos<br>* * * | Premium<br>* * * |
|---|---|---|
| Liability<br>Limit = $     1,000,000 | 1 | $83,732 |

* * *

**BUSINESS AUTO COVERAGE FORM**
* * *

**SECTION I – COVERED AUTOS**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A.     Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols |
|---|---|
| 1 | Any "Auto" |

23

302718127v1 1007810

* * *

(Exs. H-I)

106.    The Policies provide, in relevant part, the following with respect to who qualifies

as an insured for purposes of liability coverage:

**1.      Who Is An Insured**

The following are "insureds":

**a.**      You for any covered "auto".

**b.**      Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

    **(1)**      The owner or anyone else from whom you hire or borrow a covered "auto".

This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

    **(2)**      Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

    **(3)**      Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.[2]

    **(4)**      Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

    **(5)**      A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.**      Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

---

[2] The "Illinois Changes" endorsement, Form CA 01 20 06 03, incorporated into the Policies, provides that this paragraph does not apply.

24

* * *

(Exs. H-I)

107.    The Policies provide, in relevant part, the following with respect to the liability coverage provided therein:

## SECTION II – LIABILITY COVERAGE

A.    **Coverage**

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
>
> * * *
>
> We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.
>
> * * *

(Exs. H-I)

108.    The Policies define the terms "accident", "insured", "property damage", and "suit", as follows:

## SECTION V – DEFINITIONS

A.    "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

* * *

G.    "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

* * *

M.    "Property damage" means damage to or loss of use of tangible property.

N.    "Suit" means a civil proceeding in which:

    1.    Damages because of "bodily injury" or "property damage"; or

25

302718127v1 1007810

2.    A "covered pollution cost or expense";

to which this insurance applies, are alleged.

"Suit" includes:

> a.    An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or
>
> b.    Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.
>
> * * *

(Exs. H-I)

109.    The Policies contain the following exclusion applicable to the Policies' business auto liability coverage:

**B.    Exclusions**

This insurance does not apply to any of the following:

**1.    Expected Or Intended Injury**

> "Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".
>
> * * *

(Exs. H-I)

110.    Great Divide has and had no duty under the Policies to defend Linda and the McGees against the *Seng* SAC, or to indemnify them for any judgment or settlement entered in the *Seng* Lawsuit for the following reasons:

> a.    While Linda qualifies as an insured under the Policies' business auto liability section for any covered "auto", the McGees are only entitled to coverage under the Policies for the *Seng* Lawsuit to the extent they are found liable for the conduct of Linda in the *Seng* Lawsuit;
>
> b.    The *Seng* SAC does not seek damages because of "bodily injury" or "property damage", as those terms are defined by the Policies, and therefore, the *Seng* SAC does not trigger the Policies' business auto liability coverage;

26

c. Even if the *Seng* SAC alleges "bodily injury" or "property damage", which Great Divide expressly denies that it does, the Policies do not provide liability coverage for the *Seng* Lawsuit because any "bodily injury" or "property damage" was not caused by an "accident", as that term is defined in the Policies, and therefore, the *Seng* SAC does not trigger the Policies' business auto liability coverage;

d. Even if the *Seng* SAC alleges "bodily injury" or "property damage" caused by an "accident", which Great Divide expressly denies that it does, the Policies' "Expected Or Intended Injury" Exclusion bars coverage for the claims asserted in the *Seng* SAC, as all of the claims asserted in the *Seng* SAC are predicated on intentional conduct on the part of Linda and the McGees to the extent it alleges they failed to remit monies owed for delivered vehicles, refused to yield possession of said vehicles upon demand, and breached the parties' respective lease agreements;

e. Even if the *Seng* SAC alleges "bodily injury" or "property damage" caused by an "accident", which Great Divide expressly denies that it does, Linda and the McGees breached the Policies' notice condition by failing to provide Great Divide prompt notice of the *Seng* Lawsuit; and

f. Even if the *Seng* SAC alleges "bodily injury" or "property damage" caused by an "accident", which Great Divide expressly denies that it does, any "bodily injury" or "property damage" occurred outside the policy period of the Great Divide Policies.

111. For the reasons set forth above, and for any additional reasons under the terms or conditions of the Policies, Great Divide has and had no duty under the Policies to defend Linda and the McGees against the *Seng* SAC, or to indemnify them for any judgment or settlement entered in the *Seng* Lawsuit.

112. An actual controversy exists between Great Divide, Linda, the McGees, and Seng, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Great Divide, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Great Divide Policies;

27

b.     Find and declare that the aforementioned coverage defenses bar coverage under the Great Divide Policies' business auto liability coverage for the *Seng* Lawsuit;

c.     Find and declare that Great Divide has and had no duty under the Great Divide Policies to defend Linda and the McGees against the *Seng* SAC, or to indemnify Linda and the McGees for any judgment or settlement entered in the *Seng* Lawsuit; and

d.     Grant Great Divide such other and further relief that the Court deems proper under the facts and circumstances.

Respectfully submitted,

TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP

s/ *Dana A. Rice*
Dana A. Rice

Dana A. Rice
James M. Eastham
Abigail M. Afridi
Traub Lieberman Straus & Shrewsberry LLP
303 W. Madison, Ste. 1200
Chicago, IL 60606
Telephone: 312-332-3900
Facsimile: 312-332-3908
drice@tlsslaw.com
jeastham@tlsslaw.com
aafridi@tlsslaw.com

28

302718127v1 1007810