**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GREAT DIVIDE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-621 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| LINDA CONSTRUCTION, INC., | ) | |
| JESSIE McGEE, LINDA McGEE, and | ) | |
| SENG LEASING SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case involves insurance coverage for tractors and trailers. Great Divide Insurance Company sold a business auto policy to Linda Construction, which is owned by Jessie and Linda McGee. The policy covered bodily injury and property damage caused by accidents involving the vehicles.

Linda Construction leased trucks from Seng Leasing Services, but apparently fell behind in its payments. In 2014, Seng Leasing sent Linda Construction a notice of default, letting the company know that it was overdue. A few weeks later, Seng Leasing repossessed some of the tractors and trailers. But others mysteriously vanished.

Three years later, Jessie McGee sent a letter to Great Divide, seeking insurance coverage for the allegedly stolen tractors and trailers. Great Divide opened an investigation. That's when the insurance company discovered that Seng Leasing had sued Linda Construction in 2014 in state court for failing to pay for the vehicles.

Great Divide responded by filing this declaratory judgment action against Linda Construction and the McGees. The insurer sought a declaration that it has no duty to cover the allegedly stolen vehicles, and no duty to defend the state court action filed by Seng Leasing for non-payment.

Linda Construction did not respond to the complaint, so this Court entered a default judgment against the company. The McGees are the only remaining defendants, and Count VII is the only remaining claim. The theft claims are no longer pending. The only issue is whether the policy covers the state court lawsuit filed by Seng Leasing against the McGees about the failure to pay for the trucks.

The parties filed cross motions for summary judgment. Great Divide argues that the McGees are not "insureds" within the meaning of the policy. Great Divide also contends that the business auto policy does not cover the type of claims at issue in the state court case. It covers accidents involving the trucks, but not a failure to pay *for* the trucks.

For the reasons stated below, Great Divide's motion for summary judgment is granted, and the McGees' motion for summary judgment is denied.

## Non-Compliance with the Rules

Before drilling down into the facts, and diving into the record, the Court must call attention to the McGees' failure to comply with the Rules.

The Local Rules specify how parties must file and respond to motions for summary judgment. They explain what parties need to file, and how they need to do it. Those Rules exist for good reason, and compliance is essential for the orderly administration of justice. All litigants must follow the Local Rules, and *pro se* litigants are no exception.

2

Local Rule 56.1 establishes the requirements for a motion for summary judgment. The moving party must provide a "statement of material facts that complies with LR 56.1(d) and that attaches the cited evidentiary material." *See* L.R. 56.1(a)(2). That statement of facts must rest on evidence in the record, with user-friendly citations. "Each asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it." *See* L.R. 56.1(d)(2). A district court "may disregard any asserted fact that is not supported with such a citation." *Id.* A fact without evidence isn't a fact.

The moving party must submit the evidence that supports each of the proposed facts. "All evidentiary material identified in LR 56.1(a)(2) and LR 56.1(b)(3) citations must be included as numbered exhibits with the statements of fact." *See* L.R. 56.1(d)(3).

Local Rule 56.1 also explains how to respond to a motion for summary judgment. The non-moving party must file a "response to the LR 56.1(a)(2) statement of material facts that complies with LR 56.1(e)." *See* L.R. 56.1(b)(2). That response "must consist of numbered paragraphs corresponding to the numbered paragraphs" of the movant's statement of facts. *See* L.R. 56.1(e)(1).

The non-movant must confront the statement of facts head-on. "Each response must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." *See* L.R. 56.1(e)(2).

But it is not enough to say that a fact is disputed, without more. "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." *See* L.R. 56.1(e)(3). Notice the words: the non-movant must "cite" evidence – "*specific*" evidence – and "explain" why it

matters. *Id.* (emphasis added). Otherwise, the non-movant has not "dispute[d]" the movant's facts. *Id.*

A failure to offer contrary evidence means that there is nothing on the other side of the evidentiary scale. So the movant's facts are unopposed. "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *Id.* "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

The Local Rules also allow the non-moving party to supplement the record with additional facts. The non-moving party must file a statement of additional facts and "attach[] any cited evidentiary material." *See* L.R. 56.1(b)(3).

To help *pro se* litigants, the Local Rules require parties to serve a notice that explains the procedure, so that they are not lost at sea. *See* L.R. 56.2. That way, unrepresented parties will receive clear instructions about what they need to file, and how they need to do it.

Substantial compliance with Local Rule 56.1 is not enough. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). When it comes to summary judgment, there is no such thing as "close enough for horseshoes and hand grenades." All parties, including *pro se* litigants, must fully comply with Local Rule 56.1. *See Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("[E]ven *pro se* litigants must follow procedural rules.").

Compliance is important because the rules are designed to give district courts the information that they need to ferret out if there needs to be a trial. And the uniformity of the procedure – across all cases – helps district courts manage a pile of motions in a mountain of cases.

Great Divide complied with the Local Rules. Great Divide supported its motion for summary judgment by filing a statement of undisputed facts. *See* Pl.'s Statement of Facts (Dckt. No. 145). Great Divide also supported each fact with citations to admissible evidence in the record. *Id.*

By filing for summary judgment, and offering admissible evidence, Great Divide put the ball in the McGees' court. And the McGees were not left without guidance. Great Divide also served on the McGees a notice that explained the requirements of the Local Rules. *See* Notice to Unrepresented Litigants (Dckt. No. 146). So, the McGees received a how-to manual in plain English for how to respond to the motion for summary judgment.

Unlike Great Divide, the McGees did not comply with the Local Rules. The McGees filed their own motion for summary judgment, and also filed a response to Great Divide's motion for summary judgment. But the filings fell far short, in form and substance.

The McGees' motion for summary judgment suffered from a number of problems. For starters, the McGees failed to file a freestanding statement of facts. Instead, they filed a single 63-page document, entitled Defendants' Memorandum of Law in Support of their Motion for Summary Judgment. *See* Def. McGees' Mtn. for Summ. J. (Dckt. No. 147). They filed a 35-page brief, and 28 pages of exhibits (without supporting deposition transcripts, affidavits, or declarations), without a statement of facts.

A single filing does not comply with the Local Rules. The moving party must file a "supporting memorandum of law . . . *and* . . . a statement of material facts that complies with LR 56.1(d)." *See* LR 56.1(a) (emphasis added). Stuffing facts in a brief, without a freestanding Rule 56.1 statement, is not what the Local Rules have in mind.

Instead of filing a separate statement of facts, the McGees offered their version of the events in the brief itself. And even then, the brief includes two sections about the facts. Pages 10–11 include twelve paragraphs under a heading "Statement of Facts." *See* Def. McGees' Mtn. for Summ. J., at 10–11 (Dckt. No. 147). Eight pages later, a second section of facts appears in the brief, under the heading "Facts on Executed Contracts." *Id.* at 19–22. That section includes 25 new paragraphs, and each paragraph begins with letters instead of numbers (so, they run from paragraph A to Y, for a total of 25 paragraphs). *Id.*; *see also* L.R. 56.1(d)(1) (stating that a statement of facts must include "concise numbered paragraphs").

But the biggest problem is a lack of evidence. Putting those two sections together, the McGees offered 37 paragraphs of facts in their brief. But only 13 of the 37 paragraphs include citations to evidence in the record. *See* Def. McGees' Mtn. for Summ. J., at 10 (Dckt. No. 147) (paragraph 2); *id.* at 19 (paragraph B); *id.* at 21 (paragraphs K–T); *id.* at 22 (paragraph Y). So there is no evidence to support 24 of the 37 paragraphs.

That omission violated the core requirements of Local Rule 56.1(d)(2). "Each asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it." *See* L.R. 56.1(d)(2).

Summary judgment is about the facts, meaning facts supported by evidence. A statement of fact, without supporting evidence, isn't a fact for purposes of a motion for summary judgment. It's just a statement, supported by nothing, so it counts for nothing. *See Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) ("Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (cleaned up); *Phillips v. Quality Terminal Servs., LLC*, 855 F. Supp. 2d 764, 771 (N.D. Ill. 2012) ("Where

6

a party offers a legal conclusion or statement of fact without proper evidentiary support, the Court will not consider that statement.").

Four of the unsupported paragraphs do include pictures of charts or spreadsheets embedded in the facts section of the brief. *See* Def. McGees' Mtn. for Summ. J., at 10–11, 19–22 (Dckt. No. 147). For example, two pages include a photo of a spreadsheet listing examples of cases where Great Divide "failed in their duty to defend the McGees in the multiple lawsuits." *Id.* at 11, 22. Page 20 seems to include a cut-and-paste picture of a table, lifted from an unidentified document, showing transactions between Seng and Linda Construction. *Id.* at 20. Page 21 includes a summary of other payments. *Id.* at 21. It's unclear where they came from.

Summaries are acceptable, as far as they go. They're often helpful to the reader. A summary can be a demonstrative, or a summary can distill voluminous admissible evidence (and thus be admissible). *See* Fed. R. Evid. 1006. But a summary needs to summarize *evidence*. A table, chart, graph, or spreadsheet that summarizes unsupported facts is not worth anything. If it isn't supported by evidence, it has no evidentiary value.

Sometimes a document such as a spreadsheet is not a summary of evidence, but is considered evidence in its own right. For example, a spreadsheet can be a business record. But a party must lay the evidentiary foundation for an exhibit to be admissible. And here, there's no foundation.

The same problems plague the 13 paragraphs that do include citations to exhibits. At times, the McGees appear to cite spreadsheets that they prepared, without a supporting declaration to lay the foundation. *See, e.g.*, Ex. G (Dckt. No. 147, at 62 of 63). For other exhibits, the Court is left to guess what it is, and where it came from. *See, e.g.*, Ex. C (Dckt. No. 147, at 46 of 63); Ex. D (Dckt. No. 147, at 48 of 63); Ex. F (Dckt. No. 147, at 62–63 of 63).

The McGees did not fare any better when responding to Great Divide's motion for summary judgment. *See* Def. McGees' Resp. to Pl.'s Mtn. for Summ. J. (Dckt. No. 156). The McGees filed a 343-page document, including a 20-page memorandum, a 10-page response to Great Divide's Statement of Facts, and over 300 pages of exhibits with handwritten comments. *Id.*

In support of its motion for summary judgment, Great Divide filed a statement of material facts with 72 paragraphs. *See* Pl.'s Statement of Facts (Dckt. No. 145). In response to 60 of the 72 paragraphs, the McGees offered denials and objections, but no evidence. *See* Def. McGees' Resp. to Pl.'s Statement of Facts (Dckt. No. 156, at 25–35 of 343). The McGees admitted the other 12 paragraphs.

The denials and objections were insubstantial and non-descript. All too often, the McGees denied facts, without offering any evidence of their own. And they objected to facts, without giving a reason. So they expressed disagreement, but didn't back it up.

For example, in paragraph 22, Great Divide stated that it sent a Notice of Nonrenewal for the policy to the McGees on December 12, 2013. In response, the McGees mustered only the following: "Defendant McGees objects [sic] to this asserted fact in Paragraph 22." *See* Def. McGees' Statement of Disputed Facts, at ¶ 22 (Dckt. No. 156). In paragraph 40, Great Divide quoted the policy's definition of "Insured." In response, the McGees stated: "Defendant McGees affirms [sic] in part and further objects to this asserted fact in Paragraph 40." *Id.* at ¶ 40. And so on.

Those responses fell far below the standards of the Local Rules. Local Rule 56.1(e)(3) explains how the non-moving party must respond to a statement of facts. "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely

explain how the cited material controverts the asserted fact." *See* L.R. 56.1(e)(3). A failure to comply has consequences. "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *Id.* A raw denial doesn't cut it.

The blanket objections were inadequate, too. The non-moving party can respond to a motion for summary judgment by making objections. *See* Local Rule 56.1(e)(2) (permitting objections "based on admissibility, materiality, or absence of evidentiary support"). For example, it is fair game to object that the movant is relying on hearsay or on an unauthenticated document. The non-movant can object that the proffered testimony does not support the proffered fact.

The non-moving party can make lots of different types of objections. But the non-movant cannot simply state that he or she objects to the fact, and leave it at that. An objection must have a basis, and the non-moving party must articulate the basis for the objection. Otherwise, the Court can't rule on it. A blanket objection doesn't give the Court a reason, so it is not worth anything.

The McGees needed to respond to the statement of facts with evidence or with colorable objections. But most of the time, the McGees did no such thing. They simply expressed disagreement with the proposed facts. The time for bare denials has long since passed. Denials are enough at the pleading stage, because the pleadings are about allegations. But denials are not enough at the summary judgment stage, because summary judgment is about evidence.

Denials are not evidence. The non-movant cannot respond to a statement of facts by denying those facts, without more. The non-movant must come forward with evidence, not raw expressions of disagreement. *See Ammons*, 368 F.3d at 817 ("In addition, where a non-moving party denies a factual allegation by the party moving for summary judgment, that denial must

include a specific reference to the affidavit or other part of the record that supports such a denial."); *see also Bergholz v. John Marshall L. Sch*., 448 F. Supp. 3d 887, 893 (N.D. Ill. 2020) ("Bergholz denies this, but he fails to cite any record evidence indicating he has such personal knowledge, so the fact is deemed admitted."); *Lorillard Tobacco Co. v. Amoco & Food Shop 5, Inc.*, 360 F. Supp. 2d 882, 885 (N.D. Ill. 2005) ("To the extent that defendant's denials are not supported by citations to evidence in the record, the court agrees with plaintiff that those denials do not create a dispute of material fact.").

The McGees did submit more than 300 pages of documents with their response brief. *See* Def. McGees' Resp. to Pl.'s Mtn. for Summ. J. (Dckt. No. 156, at 23–343 of 343). But they did so *en masse*, in no discernible order, without tying the documents to the statement of facts.

Giving the Court a hodge-podge of exhibits is not a proper way to respond to a motion for summary judgment. The Local Rules require the non-moving party to "*cite* specific evidentiary material that controverts the fact." *See* L.R. 56.1(e)(3) (emphasis added). That way, the Court can see what evidence supports which fact. Requiring the Court to sift through hundreds of pages of documents, searching for nuggets, is not a proper way to respond to a motion for summary judgment. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) ("[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions.").

A failure to comply has straightforward consequences. Failure to serve and file a properly supported statement of material facts with a motion for summary judgment is grounds for denial of the motion. *See* L.R. 56.1(a)(3). And the Court may accept as true any (properly

supported) fact in the movant's statement of facts if the non-movant fails to come forward with contrary evidence. *See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."); L.R. 56.1(e)(3) ("Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material.").

True, the McGees are *pro se* litigants. But even *pro se* litigants must comply with the rules. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[T]he Supreme Court has made clear that even *pro se* litigants must follow rules of civil procedure.") (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) ("[P]ro se litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines."); *Harris v. Coppes*, 2019 WL 2435847, at *1 (N.D. Ill. 2019) ("Harris's *pro se* status does not excuse him from complying with Local Rule 56.1.") (collecting cases). And the Court must have procedures for an orderly resolution of litigation.

That said, the court is mindful that "a nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not . . . automatically result in judgment for the movant. [The movant] must still demonstrate that it is entitled to judgment as a matter of law." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (quotation marks and citation omitted). So the McGees' non-compliance does not automatically result in judgment for Great Divide.

The bottom line is that this Court will accept Great Divide's properly supported facts as true for purposes of the motions for summary judgment. The Court will disregard any facts proffered by the McGees that lack support from admissible evidence. *See Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 411 (7th Cir. 2019) ("According to well-established Seventh

Circuit law, [the nonmovant's] noncompliance [with Local Rule 56.1(b)(3)] meant that the district court could exercise its discretion to accept [the movant's] statements of fact as undisputed."); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion.") (quotation marks omitted); *Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607, 607 (7th Cir. 2017) ("The district court treated most of the [movant's] factual submissions as unopposed, because the [nonmovant] failed to contest them in the form required by Local Rule 56.1(b). We have held that the district court is entitled to enforce that rule in precisely the way it enforced the rule in this litigation.") (collecting cases); *Keeton*, 667 F.3d at 884.

With that long wind-up, the Court now turns to the facts of the case.

## Background

Linda Construction is a Chicago-area construction and trucking business owned by Jessie and Linda McGee. *See* Pl.'s Statement of Facts, at ¶ 5 (Dckt. No. 145). The parties don't offer much background about the business. One of its filings says that the company "was in the business of hauling waste for the city of Chicago." *See* Mtn. to Dismiss, at 1 (Dckt. No. 60). The important thing is that it needs big trucks.

About a decade ago, Linda Construction leased a number of tractors and trailers from Seng Leasing. *Id.* at ¶¶ 10, 66. The collection of vehicles apparently included ten 2005 MAC Tipper trailers, three 2004 Volvo Tractor Cab trucks, two 2003 Mack Tractor Cab trucks, a 1993 Mack Tractor Cab truck, and a 1999 Mack Tractor Cab truck. *See* Seng Leasing's Interrogatory Answers, at 3 (Dckt. No. 145-22, at 4 of 11).[1] It purchased at least one vehicle, too. *Id.*

---

[1] The parties don't provide many details about the vehicles in question in their statements of facts. But at least some of the lease agreements are in the record. *See* 9/2/10 Lease Agreement (Dckt. No. 145-21, at 9

From 2012 to 2014, Linda Construction insured the tractors and trailers with business auto policies from Great Divide.  *See* Pl.'s Statement of Facts, at ¶¶ 20–21 (Dckt. No. 145).  There were two policies, one for each year.

In January 2012, Great Divide issued the first policy to Linda Construction under policy number BAP1526874-11, covering January 26, 2012 to February 27, 2013.  *Id.* at ¶ 20.  The declaration page of the policy identified the insured as "Linda Construction, Inc."  *See* 2012–2013 Policy (Dckt. No. 145-4, at 9 of 54).  The insured was a "Corporation," not an "Individual," as shown on the checked box (and the unchecked box).  *Id.*  Several other parts of the policy referred to "Linda Construction, Inc." as the "NAMED INSURED."  *Id.* (Dckt. No. 145-4, at 2, 3, 15, 31, 35, 44).

The next year, Great Divide and Linda Construction renewed the policy for another year under policy number BAP1526874-12.  *See* Pl.'s Statement of Facts, at ¶ 21 (Dckt. No. 145); *see also id.* at ¶¶ 27, 32–33.  Once again, the declaration page identified the insured as "Linda Construction, Inc."  *See* 2013–2014 Policy (Dckt. No. 145-5, at 7 of 53).  The policy ran from February 27, 2013 to February 27, 2014.  *Id.*

In their submissions, the parties spend a lot of pages on the time period for coverage.  So, the Court will take a brief detour and go down that road, even though it is not essential to the outcome of the motions.

The second policy included an end date of February 27, 2014.  *Id.*  But in their brief, the McGees contend that the second policy "did not expire until April 3, 2014."  *See* Def. McGees' Mtn. for Summ. J., at 10 (Dckt. No. 147).  The McGees rely on two pages of a (sketchy-looking)

---

of 11).  And Linda Construction attached a copy of the state court complaint filed by Seng Leasing against Linda Construction containing more details.  *See Seng* Lawsuit Second Am. Cplt. (Dckt. No. 145-2).  The details about the vehicles aren't material, but they add color to the story.

document of unknown origin, which they claim is a record from the Federal Motor Carrier Safety Administration (or "FMCSA"), which is part of the U.S. Department of Transportation. *Id.*; *see also* FMCSA Motor Carrier (Dckt. No. 147, at 37–38 of 63).[2] There is no supporting affidavit or declaration, but the McGees argue that it is a government record that proves the existence of coverage.

The policy itself defined the length of coverage under the policy. The declaration page of the policy defined the "POLICY PERIOD," and it ran from "February 27, 2013" to "February 27, 2014." *See* 2013–2014 Policy (Dckt. No. 145-5, at 7 of 53).

It is possible to extend coverage. For example, the first policy originally ran from January 26, 2012 to January 26, 2013, before an extension of coverage to February 27, 2013. *See* 2012–2013 Policy (Dckt. No. 145-4, at 3 of 54) ("In consideration for an additional premium of $10,566.00, it is agreed this policy is extended until 02/27/13."). But the second policy had no such extension. Coverage from Great Divide under the second policy ended on February 27, 2014.

The McGees have not offered evidence that the policy in the record lacks authenticity. And they have not come forward with a copy of an endorsement that extended coverage after February 27, 2014. The plain language of the policy is clear, so the Court declines the invitation to extend coverage based on extrinsic evidence (which has authenticity problems of its own).

---

[2] The McGees do not explain what, exactly, this document is. Maybe the government requires motor carriers to self-report the existence of insurance coverage. Even so, that self-reporting would not create coverage, in and of itself. A business does not have insurance coverage simply because the business says that it has insurance coverage. And a business does not have insurance coverage simply because it told the government that it has coverage, and the government wrote it down. In any event, this document is a fragment of an unauthenticated document, so it has no evidentiary value. Also, this Court notes that the McGees submitted only two pages, and they are from different days. One page shows a "Run Date" of April 4, 2017, and the other shows a "Run Date" of September 13, 2019. *See* FMCSA Motor Carrier (Dckt. No. 147, at 37–38 of 63).

The second policy expired on February 27, 2014, and Great Divide elected not to renew that policy. *See* Pl.'s Statement of Facts, at ¶ 21 (Dckt. No. 145). So, as of February 27, 2014, insurance coverage by Great Divide came to an end.

Back to the story. In early March 2014, things took a turn for the worse. On March 4, 2014, Seng Leasing wrote a letter to Linda Construction, declaring the company in default under its lease agreements. *See* Pl.'s Statement of Facts, at ¶ 69 (Dckt. No. 145); 3/4/14 Letter (Dckt. No. 145-23). According to the letter, Linda Construction owed an unpaid balance of $78,704. *See* 3/4/14 Letter (Dckt. No. 145-23).

Seng Leasing declared that "[t]his balance must be paid in full by March 14, 2014, if not Seng LLC will exercise the default option in the Lease Agreements." *Id.* The "default option" referred to the return of the vehicles, including five tractors and eight trailers. *Id.* ("Upon the occurrence of any default by Lessee . . . Lessee shall, at Lessee's sole expanse [sic], immediately return the Vehicles to the lessor at the address of the Lessor hereunder stated in good condition.").

Apparently, Linda Construction did not foot the bill. So, on March 20, 2014, Seng Leasing picked up "the trucks." *See* Pl.'s Statement of Facts, at ¶ 72 (Dckt. No. 145). The Court assumes that term covers both the tractors and the trailers.[3]

At that point of the story, the record gets pretty murky. The statement of facts from the insurance company comes to a screeching halt. It abruptly ends, leaving the reader hanging. It

---

[3] Apparently things didn't go so smoothly. The McGees' brief includes a tantalizing nugget: "due to Plaintiff GD's failure to investigate their insured's claim of theft, policyholder Jessie McGee was falsely arrested for having possession for vehicles that ultimately were found to have been in the possession of Defendant SENG at the time of the March 20, 2014 theft." *See* Def. McGees' Resp. to Pl.'s Mtn. for Summ. J., at 8 (Dckt. No. 156); *id.* at 15 (stating that, on February 18, 2016, Jessie McGee was "falsely arrested based on SENG false report of theft of vehicles"). The McGees even contend that "Jessie McGee went to jail on false allegations by Defendant SENG and suffered several defaults . . . ." *Id.* at 16. The backstory is murky, and largely untold.

sprinkled and scattered tidbits along the way, but not in chronological order. The brief filed by the McGees isn't any better (even putting aside the evidentiary problems and the non-compliance with the Rules).

So, this Court is left to pick up the pieces, look at the fragments in the record, and try to put together the story. At times, the Court relies on the pleadings and on various other filing spread across the docket.

By the look of things, Great Divide and Linda Construction did not have any other interactions for the next few years. At least there's nothing in the record. But that changed in 2017, when Jessie McGee burst back onto the scene.

On December 12, 2017, Jessie McGee sent a letter to Berkley Specialty Underwriters Managers.[4] *See* Am. Cplt., at ¶¶ 10–14, 16–18 (Dckt. No. 31); *see also* Answer of Jessie McGee, at ¶¶ 10–14, 16–18 (Dckt. No. 38); Answer of Linda McGee, at ¶¶ 10–14, 16–18 (Dckt. No. 41).[5] McGee claimed that someone had stolen his tractors and trailers. And his phraseology suggested that he had already told the insurance company about the theft. He claimed that he wanted to "reopen" an unidentified insurance claim.

McGee wrote as follows: "In March 2014 a claim was filed for stolen tractors and trailers. As we have litigated through the court system, it has been determined that the vehicles were, in fact, stolen." *See* 12/12/17 Letter (Dckt. No. 31-2). He continued: "Linda Construction

---

[4] According to the policy, Berkley is an affiliate of Great Divide. *See* Policy BAP1526874-12 (Dckt. No. 145-5, at 7 of 53).

[5] The Court does not understand why Great Divide failed to cover this part of the story in its statement of facts. The failure to cover the waterfront inhibited the Court's review, and forced the Court to dig through the docket to learn the backstory. Rule 56 authorizes district courts to "consider other materials." *See* Fed. R. Civ. P. 56(c)(3). So the Court can consider the complaint and the answers. The Court can rely on allegations in the complaint that Defendants admitted, because there is no genuine issue about those facts.

would like to reopen/reinstate the claim filed in March, 2014, and seek payment under policy number [handwritten number] for the units stolen March 21, 2014." *Id.*

He purported to attach a "list of the units stolen," as well as the "initial police report filed with the Chicago Police Department." *Id.* The accompanying "List of Stolen Trucks and Trailers" included 19 vehicles, including 13 from "Seng Leasing." *See* List of Stolen Trucks and Trailers (Dckt. No. 31-2, at 2 of 3). The Seng tractors and trailers were "Stolen" on "3/20/14." *Id.* The accompanying police report says it was "non-criminal," and was mostly a blank form.[6] *See* Victim Information Notice (Dckt. No. 31-2, at 3 of 3).

Jessie McGee also submitted 19 "Affidavits of Vehicle Theft," meaning one per vehicle that was allegedly stolen. *See* Affidavits of Vehicle Theft (Dckt. No. 31-3). The affidavits were signed on March 7, 2018, almost four years after the alleged theft. *Id.*

It is hard to overstate the mysteriousness of that letter. McGee purported to "reopen" an insurance claim. What insurance claim? It is unclear what claim he was referring to, if such a claim ever existed at all. He cited no prior claim, and offered no prior correspondence. And why was the prior claim closed, and why did it need to be reopened?

The details of the supposed theft were shrouded in mystery, too. McGee claimed that vehicles were stolen, but according to Great Divide's statement of facts in this case (which the McGees did not dispute), Seng Leasing recovered "the trucks" on March 20, 2014. *See* Pl.'s

---

[6] As an aside, according to Seng Leasing, this incident in 2017 wasn't the first time that Linda Construction had reported stolen vehicles in an attempt to recover insurance proceeds. In state court, Seng Leasing alleged that "in 2012, Defendant reported as stolen, two of the leased Mac Tipper vehicles, and the Plaintiff was compensated through claims to its insurer." *See Seng* Lawsuit Second Am. Cplt., at ¶ 13 (Dckt. No. 145-2). But "that same vehicle was later identified and recovered from the Defendant during a repossession of various vehicles in Defendant's possession." *Id.* at ¶ 14. So the vehicle "was transferred to the insurance company who had already paid the insurance proceeds to the Plaintiff." *Id.* The Court places no weight on that allegation (both because a complaint isn't evidence, and because it is not material), but the Court includes it for color, background, and perspective. The record also includes a 2018 police report about the alleged theft from 2014. *See* Police Report (Dckt. No. 159, at 151 of 167).

Statement of Facts, at ¶ 72 (Dckt. No. 145). Was Jessie McGee claiming that *Seng Leasing* stole the vehicles? Or that someone else stole them, before Seng Leasing came by? Or something else? And how, exactly, does someone steal 13 tractors and trailers? It sounds like something out of *Goodfellas*.

Great Divide presumably had a few questions, too, so it opened an investigation. And that's when the insurance company learned about a lawsuit that Seng Leasing had filed against Linda Construction in state court *in 2014*. *See* Am. Cplt., at ¶¶ 10–14, 16–18 (Dckt. No. 31); *see also* Answer of Jessie McGee, at ¶¶ 10–14, 16–18 (Dckt. No. 38); Answer of Linda McGee, at ¶¶ 10–14, 16–18 (Dckt. No. 41). That's three years earlier.

Great Divide learned the following backstory. In 2014, a few months after sending the default letter, Seng Leasing sued Linda Construction in state court to recover the remaining balance under the lease agreements.[7] In the second amended complaint, Seng Leasing alleged that Linda Construction remained in possession of seven vehicles, and "has refused to yield possession."[8] *See Seng* Lawsuit Second Am. Cplt., at ¶¶ 4–9 (Dckt. No. 145-2); *see also* Pl.'s Statement of Facts, at ¶¶ 49–68 (Dckt. No. 145) (describing the contents of the second amended complaint in the *Seng* lawsuit).

---

[7] The original *Seng* lawsuit complaint isn't in the record, at least not in full. *See Seng* Lawsuit Cplt. (Dckt. No. 71) (page one only) (a complaint with a handwritten date of July 28, 2014); *see also Seng* Lawsuit 5/5/16 Opin. and Order (Dckt. No. 71, at 16 of 31) ("On July 28, 2014, Plaintiff Seng Truck Leasing, Co. ('Plaintiff') filed its Detinue Complaint against Defendant."). The parties don't cover the initial filing of the lawsuit in their statements of facts. But the Court sees that the case number in state court begins with 2014.

[8] It is not clear how this allegation meshes with the statement in Great Divide's statement of facts that Seng Leasing picked up "the trucks" on March 20, 2014. *See* Pl.'s Statement of Facts, at ¶ 72 (Dckt. No. 145). They could both be true – maybe Seng Leasing picked up some, but not all, of the trucks. Or maybe the statements are inconsistent. From the Court's review of the record, it appears that Seng Leasing repossessed some of the trucks, and located others but could not repossess them (because the trucks were at storage facilities with accumulated storage fees beyond the value of the vehicle). *See, e.g.*, Seng's Resp. to State Court's Order to Produce (Dckt. No. 159, at 97 of 167). Some trucks vanished without a trace, never to be found.

The state court eventually entered a default judgment against Linda Construction in 2015, but it was vacated in 2016. *See Seng* Lawsuit 7/14/15 Order (Dckt. No. 31-6); *Seng* Lawsuit 5/5/16 Opin. and Order (Dckt. No. 71, at 16 of 31). The state court entered default a second time against Linda Construction in 2017. *See Seng* Lawsuit 1/7/20 Order (Dckt. No. 145-20, at 2 of 3). As of 2019, when Great Divide filed the declaratory judgment action before *this* Court, the state court case was still ongoing. *See* Am. Cplt., at ¶ 50 (Dckt. No. 31); Answer by Jessie McGee, at ¶ 50 (Dckt. No. 38).

At some point, Jessie and Linda McGee appeared in the state court case in their individual capacities. An order from the state court in early 2020 referred to them as "putative Defendants." *See Seng* Lawsuit 1/7/20 Order (Dckt. No. 145-20, at 2 of 3). But their names did not appear in the case caption of that order. *Id.* Their names did not appear in the case caption of the second amended complaint in that state court case, either. *See Seng* Lawsuit Second Am. Cplt., at ¶¶ 4–9 (Dckt. No. 145-2). The second amended complaint did include a section entitled "PARTIES, JURISDICTION, and VENUE," but it did not mention the McGees. *See Seng* Lawsuit Second Am. Cplt., at 1.

But the first sentence roped in the McGees (loosely): "Now comes the Plaintiff, Seng Leasing Services, Inc., by its attorneys . . . and complaining against the Defendants Linda Construction, Inc., Jess[i]e McGee and Linda McGee, states as follows." *Id.* at 1. In the paragraphs that followed, the complaint referred to "Defendant" (singular), not "Defendants" (plural). There are only a few scattered exceptions. Two paragraphs allege that "Defendants" may have possession of the vehicles. *Id.* at ¶¶ 24, 29. Another paragraph used the phrase "Defendants [sic] failure," but the missing apostrophe hides whether it was singular or plural. *Id.* at ¶ 41.

Each count ends with a demand for relief. Great Divide demanded relief against Linda Construction only. *Id.* at 6 ("Wherefore, Seng Leasing Services, Inc., the Plaintiff herein prays for the entry of an Order of Detinue and judgment against Linda Construction, Inc., the Defendant herein as follows . . . ."); *id.* at 7 ("Wherefore, Seng Leasing Services, Inc., the Plaintiff herein prays for the entry of an Order of Judgment against Linda Construction, Inc., the Defendant herein as follows . . . ."); *id.* at 8 (same, except for the placement of "Plaintiff," and the spelling of "Judgement" [sic]). Great Divide sought the return of the vehicles, plus the unpaid balance of amounts owed, and so on. But Great Divide did not seek anything from the McGees personally.

In any event, even assuming that the McGees were parties in the *Seng* lawsuit, they didn't *stay* parties. On January 7, 2020, the state court ordered that "all claims as to JESSIE MCGEE and LINDA MCGEE, individually, be, and are hereby, DISMISSED, without prejudice to re-pleading in another forum." *See Seng* Lawsuit 1/7/20 Order, at ¶ 4 (Dckt. No. 145-20, at 2 of 3); *see also* Pl.'s Statement of Facts, at ¶ 60 (Dckt. No. 145) ("Jess[i]e McGee and Linda McGee have been dismissed from the *Seng* lawsuit.").

All along, Great Divide – meaning the insurance company that filed the lawsuit in the case before this Court – had no idea that Seng Leasing had sued Linda Construction in state court. The insurance company was in the dark and out of the loop.

## Procedural History

Against that backdrop, Great Divide filed the declaratory judgment suit at hand. On January 31, 2019, Great Divide filed suit against Linda Construction, Jessie McGee, and Linda McGee. The insurance company sought a declaration that it had no duty to cover the theft claim by Jessie McGee, or the *Seng* lawsuit in state court. *See* Cplt. (Dckt. No. 1).

20

Great Divide later filed an amended complaint, which included seven counts. The first six counts involved the theft claim. Great Divide requested a declaratory judgment that the policies in question did not cover Linda Construction for the alleged theft of the vehicles. Linda Construction was the only defendant on Counts I–VI.

The seventh and final count involved the *Seng* lawsuit. Count VII alleged that the policies did not cover the state court action filed by Seng Leasing. Linda Construction and the McGees (personally) were defendants on Count VII.

Jessie and Linda McGee proceeded *pro se* and filed answers to the complaint. But Linda Construction did not respond to the complaint. Great Divide served Linda Construction with process on April 22, 2019, and its answer was due by May 13, 2019. *See* 4/24/19 Order (Dckt. No. 10). Linda Construction missed that deadline.

On June 14, 2019, Judge Shah (this Court's predecessor, before reassignment) warned Linda Construction that it needed to retain a lawyer and respond to the complaint in a timely manner. *See* 6/14/19 Order (Dckt. No. 27) ("Defendant Linda Construction must be represented by counsel in federal court. Linda Construction must respond to the complaint by 7/9/19, and failure to do so will result in the entry of an order of default.").

Linda Construction did not file an answer, and no attorney filed an appearance on its behalf. On July 31, 2019, Judge Shah entered an order of default against the company. *See* 7/31/19 Order (Dckt. No. 52). A month later, an attorney appeared for Linda Construction and filed a motion to vacate the entry of default, which Judge Shah granted. *See* 9/3/19 Order (Dckt. No. 56). Judge Shah gave the company until September 17 to respond to the complaint. *Id.* The case was then reassigned to this Court.

Linda Construction met that deadline and filed a motion to dismiss. *See* Mtn. to Dismiss (Dckt. No. 60). But the motion was not long for this world. This Court set a briefing schedule, but before Great Divide could respond, Linda Construction withdrew the motion to dismiss. *See* Def. Linda Construction's Mtn. to Withdraw Mtn. to Dismiss (Dckt. No. 76). Counsel for Linda Construction filed a motion to withdraw *as counsel*, too. *See* Mtn. to Withdraw (Dckt. No. 73).

The Court gave Linda Construction more time to retain a new lawyer, and more time to respond to the complaint. *See* 11/14/19 Order (Dckt. No. 79); 12/19/19 Order (Dckt. No. 87); 1/9/20 Order (Dckt. No. 90); 1/15/20 Order (Dckt. No. 93). The Court gave repeated reminders, too.

For example, on January 9, 2020, this Court reminded Linda Construction of the upcoming deadline: "This Court also reminds the McGees that January 17, 2020 is the deadline for Defendant Linda Construction to file a statement regarding the status of retaining counsel. Plaintiff filed this case almost one year ago, and Defendant Linda Construction has not answered the Complaint. As this Court ordered on December 19, 2019, Plaintiff shall file a motion for entry of default if Linda Construction does not file a response to the complaint by January 17, 2020." *See* 1/9/20 Order (Dckt. No. 90).

By January 29, 2020, Linda Construction had not retained a new lawyer or responded to the complaint. So this Court entered default against Linda Construction under Rule 55(a). *See* 1/29/20 Order (Dckt. No. 99).

Even then, the Court gave Linda Construction more time before entering a default judgment. Great Divide filed a motion for default judgment in mid-February 2020. After waiting a few more weeks, on March 4, 2020, this Court granted the motion and entered

judgment against Linda Construction. *See* 3/4/20 Order (Dckt. No. 106); Judgment Order (Dckt. No. 107).

The Judgment Order covered all claims against Linda Construction, including the claims about the alleged theft (Counts I–VI) and the claim about the *Seng* lawsuit in state court (Count VII). Specifically, the Judgment Order provided that Great Divide had no duty to cover "the insurance claim by Linda Construction, Inc. for the alleged theft of certain tractors and trailers that Linda Construction, Inc. claims were stolen in 2014," and had no duty to "defend or indemnify Linda Construction, Inc. in the *Seng* Lawsuit filed against Jessie McGee, Linda McGee, and Linda Construction, Inc." in state court. *Id.*

At that point, the only remaining claim was the claim against Jessie and Linda McGee (individually) about the *Seng* lawsuit. So, Count VII is the only live claim.

Discovery followed. Great Divide and the McGees ultimately filed cross motions for summary judgment. *See* Pl.'s Mtn. for Summ. J. (Dckt. No. 143); Def. McGees' Mtn. for Summ. J. (Dckt. No. 147).

## Legal Standard

A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the opposing party must go beyond

the pleadings and identify specific facts showing the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

The Court construes all facts in the light most favorable to the non-moving party, giving him the benefit of all reasonable inferences. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in favor of the non-movant. *See Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

**Discussion**

Jessie and Linda McGee are the only remaining defendants, and Count VII is the only remaining claim. This Court already entered judgment against Linda Construction on all seven counts. The McGees were not defendants on Counts I–VI, meaning the claims about the theft of the tractors and trailers. So Count VII against the McGees is all that's left.

Count VII is about coverage for the *Seng* lawsuit, not the claim about stolen tractors and trailers. Even so, the McGees seek a ruling that Great Divide has a duty to cover the theft of the vehicles. So, the Court will first address the alleged theft, and then will turn to coverage for the *Seng* lawsuit.

## I.      Coverage for the Theft Claim

The first six counts are about the alleged theft of the tractors and trailers. But before diving into the issue of coverage, there is a threshold issue of whether there is anything for this Court to decide at all.

There isn't. This Court entered judgment against Linda Construction on those six counts. Great Divide's complaint did not include a claim against the McGees about the stolen vehicles. And the McGees did not raise a counterclaim on that issue, either.

Great Divide's amended complaint included seven counts. *See* Am. Cplt. (Dckt. No. 31). The first six counts addressed the demand for coverage for the alleged theft. *Id.* at ¶¶ 62–103. Great Divide brought the first six counts against Linda Construction (only). *See id.* at ¶¶ 70, 78, 87, 93, 98, 103. That is, Great Divide sought a declaratory judgment that it had no duty to provide coverage *to Linda Construction* for the alleged theft. Great Divide did not bring a claim against the McGees (personally) about the alleged theft.

The only claim against the McGees is Count VII, and that claim is about the *Seng* lawsuit. It begins with the following heading: "NO COVERAGE UNDER THE POLICIES FOR THE *SENG* LAWSUIT." *See* Am. Cplt., at 23 (Dckt. No. 31). Paragraph 110 articulates six reasons why Great Divide has no duty to indemnify or defend Linda Construction or the McGees "for any judgment or settlement entered in the *Seng* lawsuit." *Id.* at ¶ 110; *see also id.* at ¶ 111 (alleging that "Great Divide has and had no duty under the Policies to defendant Linda and the McGees against the *Seng* SAC, or to indemnify them for any judgment or settlement entered in the *Seng* Lawsuit"). In the "WHEREFORE" paragraph, Great Divide seeks a declaration that it has no duty to cover "the *Seng* Lawsuit." *Id.* at ¶ 112. And there's no mention in Count VII of the theft claim.

Again, this Court already entered a default judgment against Linda Construction on the six counts about the alleged theft. *See* Judgment Order (Dckt. No. 107). The first six counts were about the theft, and Linda Construction was the only defendant for those claims. Great

Divide did not seek a declaratory judgment against *the McGees* about the theft. So there is nothing left to decide. There's no pending claim about the theft.

Nonetheless, the McGees contend that there is live issue about the supposed loss of the vehicles, and they point to their answers. *See* Def. McGees' Resp. to Pl.'s Mtn. for Summ. J., at 5 (Dckt. No. 156). At times, the McGees seem to argue that their answers contained a counterclaim about the theft. *See id.* ("The Answers filed by the McGees absolutely sought relief from the Court, thereby constituting a counterclaim assertion."). At other times, the McGees suggest that they didn't file a counterclaim, but that they can seek relief about the theft anyway. *Id.* at 7 ("Without a filed counterclaim, Defendant McGees are still well within their statutory right to pursue monetary relief and a declaration against [Great Divide] and all other relief relevant for Plaintiff's failure in their duty to payout, defend and indemnify.").

Whatever the argument, one conclusion is inescapable. The McGees did not assert a counterclaim against Great Divide in their answers. The answers responded to the allegations of the complaint, paragraph by paragraph. That is, Great Divide's amended complaint included 112 paragraphs, and the McGees gave responses to each of the 112 paragraphs. But the answers included no counterclaim.

The answers did include the following sentence at the very end: "WHEREFORE, defendants ask this Honorable Court to find Great Divide had a duty to defend and pay Linda Construction for their claim." *See* Def. Jessie McGee's Answer, at 6 (Dckt. No. 38); Def. Linda McGee's Answer, at 6 (Dckt. No. 41). That solitary sentence did not assert a counterclaim, by any stretch of the imagination.

For starters, it is phrased as a summary of the preceding text, as illustrated by the use of the word "WHEREFORE." Everything that preceded that sentence was a response to the

specific paragraphs of the complaint. There was no new material alleging anything by the McGees.

That solitary sentence fell far short of the requirements of the Federal Rules. Rule 8(a) provides that a "pleading that states a claim for relief must contain" both "a short and plain statement of the claim showing that the pleader is entitled to relief," and a "demand for the relief sought." *See* Fed. R. Civ. P. 8(a)(1), (2). A "demand" for "relief" is necessary, but not sufficient. *Id.* A raw demand for coverage, without more, isn't enough to state claim.

And even then, Jessie and Linda McGee could assert counterclaims on behalf of Jessie and Linda McGee (only). The McGees filed answers in their personal capacities, and those answers could have included a counterclaim by the McGees (personally). But the answers by the McGees could not assert a counterclaim on behalf of a corporate entity. Only the company can litigate for the company. Each defendant must litigate for itself.

Here, the passage in question stated that the McGees wanted a ruling that Great Divide "had a duty to defend and pay *Linda Construction* for their claim." *See* Def. Jessie McGee's Answer, at 6 (Dckt. No. 38) (emphasis added); Def. Linda McGee's Answer, at 6 (Dckt. No. 41) (same). But the McGees can't counterclaim on behalf of Linda Construction. Defendant X can't file a counterclaim on behalf of Defendant Y.

If Linda Construction wanted to file a counterclaim, then Linda Construction needed to retain a lawyer, file an answer, and assert a counterclaim. It didn't, so there's nothing left.

The fact that the McGees own Linda Construction does not change the analysis. Corporations are distinct legal entities, meaning that they exist separately from their shareholders, officers, and directors. *See Main Bank of Chicago v. Baker*, 86 Ill. 2d 188, 56 Ill. Dec. 14, 427 N.E.2d 94, 101 (1981). So, if Linda Construction wanted to file a counterclaim,

27

then Linda Construction itself needed to file a counterclaim. An assertion by the company's owners doesn't do it.

In sum, there is no live issue on the claims about coverage for the alleged theft. Great Divide brought six claims against Linda Construction (only) on that issue, and this Court already entered judgment against Linda Construction. Great Divide did not bring a claim against the McGees about the theft, and the McGees did not bring a counterclaim against Great Divide about the theft.

## II.    Coverage for the *Seng* Lawsuit

Unlike the alleged theft, the *Seng* lawsuit is still at issue. Great Divide argues that it has no duty to cover the McGees for the *Seng* lawsuit. The Court agrees.

Under Illinois law,[9] a duty to defend is generally broader than a duty to indemnify. *See Am. Bankers Ins. Co. of Fla. v. Shockley*, 3 F.4th 322, 327 (7th Cir. 2021). "That is, an insured need only put the insurer on notice of the claim in order to trigger the insurer's duty to defend. . . . The duty to indemnify, however, arises only in circumstances of *actual* coverage; if the insurance policy does not cover what is alleged in the claim, the insurer will not have a duty to indemnify based on that claim." *See Keystone Consol. Indus., Inc. v. Emps. Ins. Co. of Wausau*, 456 F.3d 758, 762 (7th Cir. 2006) (emphasis in original). It's the difference between potential coverage and actual coverage.

---

[9] The parties take it as a given that Illinois law applies, so the Court will too. *See, e.g.*, Pl.'s Mtn. for Summ. J., at 7 (Dckt. No. 144); Def. McGees' Mtn. for Summ. J., at 15 (Dckt. No. 147); *see also Bowers v. Fed'n Internationale de l'Autombile*, 489 F.3d 316, 324 n.4 (7th Cir. 2007); *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 864 (7th Cir. 1999) ("The parties agree that the substantive issues in this diversity suit are governed by Illinois law, and we do not look behind such agreements so long as they are reasonable[.]"); *Christopoulos v. Trout*, 343 F. Supp. 3d 812, 817 n.3 (N.D. Ill. 2018) ("[T]he court need not conduct a choice of law analysis because the parties have not conducted one or advocated for applicability of the law of a state other than Illinois, resulting in waiver of choice of law.").

"The insurer bears the burden of establishing that it has no duty to defend." *See Skolnik v. Allied Prop. & Cas. Ins. Co.*, 2015 Il App (1st) 142438, 399 Ill. Dec. 171, 45 N.E.3d 1161, 1167 (2015). "'To determine whether the insurer has a duty to defend the insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant provisions of the insurance policy . . . .  If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises.'"  *See Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 346 (7th Cir. 2010) (quoting *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 180 Ill. Dec. 691, 607 N.E.2d 1204, 1212 (1992)); *see also Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010); *Westfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, 863 F.3d 690, 695 (7th Cir. 2017).

That is, a court "applies what is known as the 'eight-corners' rule:  we compare the four corners of the underlying complaint with the four corners of the policy, according both the complaint and the policy a liberal construction."  *See Madison Mut. Ins. Co. v. Diamond State Ins. Co.*, 851 F.3d 749, 753 (7th Cir. 2017); *United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 579–80 (7th Cir. 2021).

But "an insurer has no duty to defend where it is 'clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.'"  *Conn. Indem. Co. v. DER Travel Serv.*, 328 F.3d 347, 349 (7th Cir. 2003) (quoting *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 161 Ill. Dec. 280, 578 N.E.2d 926, 930 (1991)).  A duty to defend has territorial limits, defined by the boundaries of the policy.

When making the duty to defend determination, a court must liberally construe both the underlying complaint and the insurance policies in favor of the insured. *See Westfield Ins. Co.*, 863 F.3d at 695. But "[a]n insurance policy is a contract, and the same rules of construction that apply to other types of contracts apply to insurance policies." *See Archer Daniels Midland Co. v. Burlington Ins. Co. Grp., Inc.*, 785 F. Supp. 2d 722, 727 (N.D. Ill. 2011) (Dow, J.) (citing *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 223 Ill. 2d 407, 307 Ill. Dec. 626, 860 N.E.2d 280, 285 (2006)). Thus, "[a]n insurance policy must be construed as a whole, giving effect to every provision." *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 305 Ill. Dec. 533, 856 N.E.2d 338, 342–43 (2006). The "primary objective is to ascertain and give effect to the intention of the parties as expressed in the agreement." *Nicor, Inc.*, 860 N.E.2d at 286; *see also Country Mut. Ins. Co.*, 856 N.E.2d at 343. "If the words used in the policy are unambiguous, they are given their plain, ordinary, and popular meaning." *Country Mut. Ins. Co.*, 856 N.E.2d at 343.

So "[a]lthough insurance policies are construed liberally in favor of coverage, this rule of construction comes into play only when the policy language is ambiguous." *Id.* "Whether an ambiguity exists turns on whether the language in the policy is susceptible of more than one reasonable interpretation." *Archer Daniels Midland Co.*, 785 F. Supp. 2d at 727. The test of ambiguity is what a reasonable person in the position of the insured would understand them to mean, not what the insurer intended its words to mean. *See Ins. Co. of Illinois v. Markogiannakis*, 188 Ill. App. 3d 643, 136 Ill. Dec. 307, 544 N.E.2d 1082, 1089 (1989).

While "the duty to defend is broad, the duty is not limitless." *See Westfield Ins. Co.*, 863 F.3d at 695; Steven Plitt *et al.*, 14 Couch on Insurance § 200:19 (3d ed. 2020) ("[A]lthough broad, the duty to defend is not limitless and is measured by the nature and kinds of risks

covered by the insurance policy.").  An insurer can refuse to defend if "it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage."  *See United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 580–81 (7th Cir. 2021) (quoting *Outboard Marine Corp.*, 607 N.E.2d at 1212); *see also* Steven Plitt *et al.*, 14 Couch on Insurance § 200:12 (3d ed. 2020) ("[T]he duty to defend does not extend to circumstances where there is no duty to indemnify as a matter of law.  There is no duty to defend as a matter of law only if there is no possible factual or legal basis on which the insurer could be obligated to indemnify the insured.").

Great Divide makes a number of arguments against coverage.  The Court will address only two, because there is no need to address more.  The McGees do not fall within the definition of "insureds" under the policy.  And the policies did not cover the types of claims advanced in the *Seng* lawsuit.

### A.    The Definition of "Insured"

Great Divide begins with an argument about who the policy covers.  Great Divide argues that there is no coverage because the McGees are not "insureds" under the policy.  The Court agrees.

The policy defines "insured" as "any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage."  *See* Pl.'s Statement of Facts, at ¶ 40 (Dckt. No. 145); *see also* Policy BAP1526874-12 (Dckt. No. 145-5, at 27 of 53).  That language refers to a section of the policy entitled "LIABILITY COVERAGE," which includes a subsection entitled "Who Is An Insured."  *See* Policy BAP1526874-12, at 18–19 of 53.  That provision, in turn, defines "insureds" as follows:

### 1.     Who Is An Insured

The following are "insureds":

a.     You for any covered "auto".

b.     Anyone else while using with your permission a covered "auto" you own, hire, or borrow except . . .

\*          \*          \*

c.     Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

*Id.*; *see also* Pl.'s Statement of Facts, at ¶ 44.  The policy also has an endorsement that amends Section A.1 and expands the scope of coverage.  Coverage extends to:

d.     Any person or organization to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into . . . .

*See* Policy BAP1526874-12 (Dckt. No. 145-5, at 48 of 53).

Those definitions use the word "you," but that term is not left up in the air.  The policy provides that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations."  *Id.* at 17 of 53; Pl.'s Statement of Facts, at ¶ 42 (Dckt. No. 145).  According to the declaration page, the Named Insured is "Linda Construction, Inc."  *See* Policy BAP1526874-12 (Dckt. No. 145-5, at 7 of 53); Pl.'s Statement of Facts, at ¶ 43.  And the policy specifies that the insured is a "Corporation."  *See* Policy BAP1526874-12, at 7 of 53.

So, the policy covers Linda Construction.  The policy also covers (1) anyone who is "using" the company's vehicles with permission; (2) anyone who is "liable for the conduct" of Linda Construction; and (3) anyone who Linda Construction must include as an additional insured under a contract.

32

The McGees don't fall within that definition. The *Seng* lawsuit is not about the McGees "using" the vehicles. *Id.* at 18–19 of 53. It is not as if the McGees got their hands on the keys, got behind the wheel, crashed a truck, and landed as defendants in the *Seng* lawsuit.

The next part of the definition does not apply, either. The *Seng* lawsuit does not seek to hold the McGees "liable for the conduct" of Linda Construction. *Id.* In the second amended complaint, Seng Leasing demanded the return of the vehicles plus unpaid fees from Linda Construction. *See Seng* Lawsuit Second Am. Cplt. (Dckt. No. 145-2). But Seng Leasing did not demand *anything* from the McGees. Seng Leasing is not trying to put them on the hook for the company's unpaid bills.

The final part of the definition also does not apply to the McGees. There is nothing in the record suggesting that the McGees entered into a contract with Linda Construction that required adding them as additional insureds. *See* Policy BAP1526874-12 (Dckt. No. 145-5, at 48 of 53).

The McGees do not advance any argument under most parts of the definition of "insured." They do not argue that they have coverage because they were using a covered vehicle. They also do not argue that the *Seng* lawsuit attempts to hold them personally liable for the company's debts, or that they are additional insureds.

Instead, the McGees argue that the term "you" is ambiguous. *See* Def. McGees' Resp. to Pl.'s Mtn. for Summ. J, at 9 (Dckt. No. 156). In their view, the policy covers them because they signed it: "Jessie McGee and Linda McGee are the insured persons who signed the Great Divide application for bound coverage. They are the insured, period." *Id.*

There is nothing ambiguous about the meaning of the term "you." Language is ambiguous if it susceptible to more than one reasonable interpretation. *See Lexington Ins. Co. v. RLI Ins. Co.*, 949 F.3d 1015, 1020 (7th Cir. 2020); *Thompson v. Gordon*, 241 Ill. 2d 428, 349 Ill.

33

Dec. 936, 948 N.E.2d 39, 47 (2011).  Language is not ambiguous simply because the parties

disagree about what it means.  *See Rohe ex rel. Rohe v. CNA Ins. Co.*, 312 Ill. App. 3d 123, 244

Ill. Dec. 442, 726 N.E.2d 38, 41 (2000) ("However, a policy term is not ambiguous because the

term is not defined within the policy or because the parties can suggest creative possibilities for

its meaning.");  *Lexington Ins. Co.*, 949 F.3d at 1020 (noting that "[t]he mere fact of disagreement

between the parties does not render language ambiguous").  "And, a court cannot read an

ambiguity into a policy just to find in favor of the insured."  *See Rohe ex rel. Rohe*, 726 N.E.2d

at 41.

The language in question had no wiggle room.  The term "you" means the "Named

Insured," and the "INSURED'S NAME" is Linda Construction.  *See* Policy BAP1526874-12

(Dckt. No. 145-5, at 17 of 53); *id.* at 7 of 53.  So "you" means the company.  Nothing in that

language includes the signatory in a personal capacity.

The adjacent boxes reinforced the point.  The declaration page included a number of

boxes to check, so that the policy could identify the "FORM OF BUSINESS."  *Id.* at 7 of 53.

According to the form, the insured was a "Corporation."  *Id.*  The box for an "Individual" went

unchecked.  *Id.*

Signing a contract on behalf of an entity does not make the signatory a party to the

contract.  A person does not become a party in a personal capacity to a company's contract

simply by holding the pen.  A corporation has an independent legal existence, separate and apart

from its shareholders, directors, and officers.  *See In re Rehab. of Centaur Ins. Co.*, 158 Ill. 2d

166, 198 Ill. Dec. 404, 632 N.E.2d 1015, 1017 (1994); *Main Bank of Chicago v. Baker*, 86 Ill. 2d

188, 56 Ill. Dec. 14, 427 N.E.2d 94, 102 (1981); *Peetoom v. Swanson*, 334 Ill. App. 3d 523, 268

Ill. Dec. 305, 778 N.E.2d 291, 295 (2002).  The signatory isn't personally responsible for the

burdens of the company's contract (say, the duty to pay the bill), and isn't personally entitled to the benefits, either.

By the same token, the existence of a person's signature, without more, does not create an ambiguity about who is a party to the contract. After all, companies can act only through people.

Illinois courts widely hold that a policy is not ambiguous when it defines "you" to mean the company as the named insured, and an individual signs on behalf of the company. *See, e.g.*, *Rohe ex rel. Rohe*, 726 N.E.2d at 43 ("In the instant case, the clear and unambiguous language of the policy defines 'you' and 'your' as the 'named insured' in the policy declarations. The 'named insured' is a corporation, not an individual, which cannot have 'family members.'"); *Econ. Preferred Ins. Co. v. Jersey Cnty. Const., Inc.*, 246 Ill. App. 3d 387, 186 Ill. Dec. 233, 615 N.E.2d 1290 (1993).

For example, an Illinois appellate court found no ambiguity in the word "you" in *Stark v. Illinois Emcasco Insurance Co.*, 373 Ill. App. 3d 804, 311 Ill. Dec. 944, 869 N.E.2d 957, 961 (2007). The appellate court rejected the argument that a reasonable person could interpret "you" – referring to the "named insured" – to include the sole director, officer, and shareholder of a named insured corporation. *Id.* Corporations have a distinct legal existence, so there is nothing ambiguous about a definition that covers the entity itself but not individuals. *Id.*

As a fallback, the McGees argue that they reasonably expected coverage. That argument does not get them very far. An expectation is unreasonable if it is inconsistent with the plain text of the policy. And here, the McGees simply do not fall within the textual boundaries.

And in any event, Illinois courts have rejected the notion that the reasonable expectations doctrine applies in Illinois. Simply put, "the 'reasonable expectations' doctrine is not recognized in Illinois." *Zurich Ins. Co. v. Raymark Indus., Inc.*, 145 Ill. App. 3d 175, 98 Ill. Dec. 512, 494

N.E.2d 634, 645 (1986); *see also El Rincon Supportive Servs. Org., Inc. v. First Nonprofit Mut. Ins. Co.*, 346 Ill. App. 3d 96, 281 Ill. Dec. 128, 803 N.E.2d 532 (2004); *Smagala v. Owen*, 307 Ill. App. 3d 213, 240 Ill. Dec. 398, 717 N.E.2d 491 (1999); *Gen. Ins. Co. of Am. v. Robert B. McManus, Inc.*, 272 Ill. App. 3d 510, 209 Ill. Dec. 107, 650 N.E.2d 1080 (1995); *Ins. Co. of N. Am. v. Adkisson*, 121 Ill. App. 3d 224, 76 Ill. Dec. 673, 459 N.E.2d 310 (1984); *Nautilus Ins. Co. v. Squaw Bar, Inc.*, 2012 WL 1068767, at *3 (N.D. Ill. 2012).

In sum, the policy does not cover the McGees because they do not fall within the definition of "insured" under the policy.

### B. Covered Claims

Great Divide then argues that the policy does not cover the types of claims advanced in the *Seng* lawsuit. The Court agrees.

Again, courts determine the duty to defend by comparing the language of the policy to the allegations of the underlying lawsuit. *See Santa's Best Craft*, 611 F.3d at 346. The policy in question is a business auto policy. The policy defines the scope of coverage as follows: "[Great Divide] will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from ownership, maintenance or use of a covered auto." *See* Policy BAP1526874-12 (Dckt. No. 145-5, at 18 of 53).

Great Divide has the "right and duty to defend any 'insured' against a 'suit' asking for such damages . . . ." *Id.* But that duty depends on the nature of the claims against the insured. "[W]e have no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' . . . to which this insurance does not apply." *Id.*; *see also* Pl.'s Statement of Facts, at ¶ 38 (Dckt. No. 145).

So under the policy, Great Divide only has a duty to defend and indemnify if there is
(1) a suit against an insured for damages, (2) because of bodily injury or property damage,
(3) caused by an accident, (4) resulting from ownership, maintenance, or use of a covered auto.
Read naturally, it sounds like it covers a car accident.

The *Seng* lawsuit falls far outside the boundaries of coverage. That case is about Linda
Construction's failure to pay for vehicles that it leased and bought from Seng Leasing. *See Seng*
Lawsuit Second Am. Cplt. (Dckt. No. 145-2). Seng Leasing alleged that Linda Construction
(1) leased ten trailers on September 1, 2010; (2) leased five trucks on September 2, 2010;
(3) purchased a truck on November 2, 2012. *Id.* at ¶¶ 4, 6, 8. And then, Linda Construction
failed to pay an outstanding balance of $88,430.50. *Id.* at ¶ 12.

Seng Leasing's second amended complaint included three counts: (1) replevin/detinue;
(2) conversion; and (3) breach of contract. *Id.* at ¶¶ 4–41. Seng Leasing sought the return of the
vehicles, plus the unpaid balance of the rental fees. *Id.*[10]

That's not the type of case covered by the policy. The *Seng* lawsuit does not include any
allegations of a "bodily injury" or "property damage." *See* Policy BAP1526874-12 (Dckt.
No. 145-5, at 18 of 53). There was no "accident." *Id.* And the harm did not come from the
"ownership, maintenance or use of a covered auto." *Id.*

And again, the policy covers "all sums" that an insured "must pay as damages." *Id.* But
here, there was no demand for any damages from the McGees. In fact, the complaint does not
even mention the McGees, except the first sentence. The opening line paints in broad strokes:
"Now comes the Plaintiff, Seng Leasing Services, Inc., by its attorneys . . . and complaining

---

[10] The McGees do not argue that the analysis would be different under prior versions of the complaint.
So any such argument is waived.

against the Defendants Linda Construction, Inc., Jess[i]e McGee and Linda McGee, states as follows . . . ." *See Seng* Lawsuit Second Am. Cplt. (Dckt. No. 145-2). But nothing followed.

Taking a step back, Great Divide sold a business auto policy to Linda Construction. That policy basically provided coverage if something bad happened while operating a vehicle. It would cover an accident that hurt someone, or broke something. But the business auto policy does not cover the failure to pay for the vehicle *itself*.

In sum, Seng Leasing basically brought claims against Linda Construction for the failure to pay for tractors and trailers. Those types of claims are not covered by the policy in question, so there is no duty to defend.[11]

### C. Arguments by the McGees

By and large, the McGees do not respond to Great Divide's arguments against coverage. Instead, the McGees unveil a wide assortment of arguments of their own.

Some of the arguments appear to be affirmative defenses, such as estoppel. *See* Def. McGees' Mtn. for Summ. J., at 22–23 (Dckt. No. 147). Other arguments appear to be counterclaims. An example is the notion that Great Divide is denying coverage in bad faith in violation of the Illinois Insurance Code. *Id.* at 23–26.

From a pleading standpoint, the arguments came out of nowhere. The answers filed by the McGees did not include any affirmative defenses or counterclaims. *See* Answer of Jessie McGee (Dckt. No. 38); Answer of Linda McGee (Dckt. No. 41). Unveiling them now is more than a little difficult to square with the Federal Rules, which favor disclosure and disfavor unfair surprises. The Federal Rules require defendants to assert affirmative defenses and counterclaims

---

[11] As an aside, it is unclear what the McGees would seek to be defended *against*, given that they were dismissed from the state court lawsuit. But maybe the McGees hypothetically could have sought to recoup attorneys' fees incurred up to that point. But there is no need to drill down on that point, because the McGees are not insureds, and the claims at issue in the *Seng* lawsuit are not covered by the policy.

in their answers, and for good reason. *See* Fed. R. Civ. P. 8(a), (c)(1); *see also* Fed. R. Civ. P. 12(b); Fed. R. Civ. P. 13(a) (governing compulsory counterclaims).

The deadline to amend the pleadings has long since passed. This Court set a deadline of February 28, 2020 for any amendments to the pleadings. *See* 1/15/20 Order (Dckt. No. 92). This Court previously called attention to the fact that the "deadline to amend the pleadings has passed." *See* 5/20/20 Order (Dckt. No. 113). Rule 16(b)(4) requires a showing of good cause to amend a scheduling order. *See* Fed. R. Civ. P. 16(b)(4). The McGees made no such showing.

Raising new affirmative defenses and new counterclaims at this late stage is highly disruptive. Orderly litigation requires parties to lay their cards on the table, without lying in wait for the opportune time to surprise one's opponent. Parties need time to see the other side's hand, so that they can consider their next move and respond accordingly. Keeping affirmative defenses and counterclaims up one's sleeve would create chaos and uncertainty, and encourage gamesmanship. That's why the Rules of the game require disclosure, by putting one's cards on the table (and on the docket) in the pleadings.

Here, Great Divide had no opportunity to take discovery on the new defenses and counterclaims. By waiting so long, the McGees deprived Great Divide of the opportunity to test the factual and legal basis for the defenses and counterclaims. Allowing the McGees to surprise everyone with new defenses and counterclaims would be prejudicial, so they are forfeited. *See Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 478–79 (7th Cir. 2019).

The arguments lack merit, even if they were timely. For starters, Great Divide is not estopped from seeking a declaratory judgment about the scope of coverage. *See* Def. McGees' Mtn. for Summ. J., at 22–23 (Dckt. No. 147); Def. McGees' Resp. to Pl.'s Mtn. for Summ. J., at 14–17 (Dckt. No. 156). In fact, Great Divide did exactly what it is entitled to do: go to court

and seek a declaration about its obligations under a policy. *See Santa's Best Craft*, 611 F.3d at 349 ("Under Illinois law, an insurer has three options if it contests its duty to defend:  (1) seek a declaratory judgment regarding its obligations before trial of the underlying action; (2) defend the insured under a reservation of rights; or (3) refuse either to defend or to seek a declaratory judgment at the insurer's peril that it might later be found to have breached its duty to defend and estopped from asserting defenses as to payment based on non-coverage.").

The McGees argue that a declaratory judgment is merely an advisory opinion. *See* Def. McGees' Mtn. for Summ. J., at 26–27 (Dckt. No. 147).   Not so.  The Court is not ruling upon some hypothetical set of facts that may or may not come to pass someday.  The Court is ruling about a concrete set of facts that has already taken place, and is ruling that there is no duty to cover the *Seng* lawsuit.  *See Molex Inc. v. Wyler*, 334 F. Supp. 2d 1083, 1086 (N.D. Ill. 2004) ("[A]n actual controversy exists where an insured alleges that its insurer has a duty to defend him against potential liability in an underlying action.").

Great Divide did not breach its duty to defend, and did not deny coverage in bad faith, either. *See* Def. McGees' Mtn. for Summ. J., at 23–26 (Dckt. No. 147); Def. McGees' Resp. to Pl.'s Mtn. for Summ. J., at 14–19 (Dckt. No. 156).  This Court has ruled that the policy did not cover the *Seng* lawsuit.  So, by definition, there was no bad faith denial of coverage. *See Marshallah, Inc. v. W. Bend Mut. Ins. Co.*, 2021 WL 679227, at *4 (N.D. Ill. 2021); *Martin v. Illinois Farmers Ins.*, 318 Ill. App. 3d 751, 252 Ill. Dec. 310, 742 N.E.2d 848, 858 (2000) ("[A] defendant cannot be liable for section 155 relief where no benefits are owed.").

The McGees also appeal to equity, but equity cannot save them. *See* Def. McGees' Resp. to Pl.'s Mtn. for Summ. J., at 19–21 (Dckt. No. 156).  There is nothing inequitable about denying coverage when there is none.

At times, the McGees argue that Great Divide had a duty to provide coverage for the McGees for an assortment of other lawsuits. *See* Def. McGees' Mtn. for Summ. J., at 11, 31 (Dckt. No. 147). According to the McGees, "[a]s a direct result of Plaintiff GD's [Great Divide's] inactions in the processing of the McGee's [sic] claim of loss, the McGees were named as Defendants in multiple lawsuits, and consequently have lost their home and their business all to the tune of millions." *Id.* at 11. They argue that creditors obtained judgments against them in seven other lawsuits (plus the *Seng* case), totaling more than $1.9 million. *Id.*

That allegation comes far too late in the game. The McGees did not bring a counterclaim against Great Divide for anything. They did not seek coverage for the *Seng* case, or for the seven other lawsuits. It would prejudice Great Divide if the McGees could seek coverage for unrelated lawsuits in the final moments of this case, when Great Divide and this Court know nothing about them. According to the McGees, the complaints were filed from 2014 to 2017, so they had more than enough time to bring a counterclaim for coverage if they had a basis to do so. *Id.*

The McGees also fault Great Divide for suing the wrong entity in the Seng Leasing corporate family. Great Divide named Seng Leasing Services, Inc. as a defendant. The McGees believe that Great Divide should have named Seng Truck Leasing Company. But Seng Leasing Services, Inc. is the entity that filed the *Seng* lawsuit in state court, so Great Divide named the right entity (in this case, anyway). *See Seng* Lawsuit Second Am. Cplt. (Dckt. No. 145-2); *see also Zurich Ins. Co. v. Baxter Int'l, Inc.*, 173 Ill. 2d 235, 218 Ill. Dec. 942, 670 N.E.2d 664, 669 (1996) (explaining how the claimant in the underlying action is a necessary party in a declaratory judgment action about insurance coverage).

The McGees make an assortment of other arguments, including improper removal (even though the case filed in federal court in the first instance), and so on. *See* Def. McGees' Mtn. for

Summ. J., at 13–15 (Dckt. No. 147).  The Court has considered all of the arguments, but none of them are meritorious.

### Conclusion

Great Divide's motion for summary judgment is granted.  Jessie and Linda McGee's motion for summary judgment is denied.

Date:   February 1, 2022 _____

Steven C. Seeger
United States District Judge